IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROSS DETTMERING, FRANCIS MANGUBAT, and all other similarly situated individuals, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 22-1482-CFC-SRF |
| VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VO, SEAN TU, JIN GAO, and JOHN DOE INDIVIDUALS 1-10, and ABC COMPANIES 1-10, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |
| MICHAEL EICHLER, and all other similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 22-1574-CFC-SRF |
| VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VO, SEAN TU, JIN GAO, and JOHN DOE INDIVIDUALS 1-10 and ABC COMPANIES 1-10, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**REPORT AND RECOMMENDATION**

Presently before the court in these civil actions[1] brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), are the following motions: (1) a motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), respectively, which was filed by defendant Jin Gao, (D.I. 30);[2] (2) a motion to dismiss for lack of standing, lack of personal jurisdiction, and failure to state a claim under Rules 12(b)(1), 12(b)(2), and 12(b)(6), respectively, which was filed by defendant Phuong D Vo a/k/a Katie Vo ("Katie Vo"), (D.I. 33); and (3) Katie Vo's motion to dismiss for lack of standing, lack of personal jurisdiction, and failure to state a claim in Civil Action No. 22-1574-CFC-SRF ("*Eichler*"), which is identical to the motion to dismiss filed in Civil Action No. 22-1482-CFC-SRF ("*Dettmering*"), (C.A. No. 22-1574-CFC-SRF, D.I. 31).[3] For the following reasons, I recommend that the court GRANT Jin Gao's motion to dismiss Counts I and II of the complaint and dismiss the remaining causes of action under 28 U.S.C. § 1367(c)(3). I further recommend that the court DENY Katie Vo's motion to dismiss as moot.

I. **BACKGROUND**

On November 10, 2022, plaintiffs Ross Dettmering and Francis Mangubat (collectively, "Plaintiffs"), on behalf of themselves and all other similarly situated individuals, filed this putative class action against VBit Technologies Corp., VBit Mining LLC, Advanced Mining

---

[1] Unless otherwise noted, all citations to D.I. numbers refer to the docket in Civil Action No. 22-1482-CFC-SRF.
[2] The briefing and filings associated with Jin Gao's pending motion to dismiss are found at D.I. 31, D.I. 32, D.I. 40, and D.I. 55.
[3] The briefing and filings associated with Katie Vo's pending motion to dismiss are found at D.I. 34, D.I. 35, D.I. 41, and D.I. 63. In Civil Action No. 22-1574-CFC-SRF, the parties stipulated that "the Court's opinion and order on Ms. Vo's motion regarding the *Dettmering* Complaint will have *res judicata* effect on the *Eichler* Complaint," and "Plaintiffs intend to seek consolidation after the Court rules on the pending motion to dismiss in *Dettmering* and will file a consolidated complaint." (D.I. 33 at 2 & n.1)

2

Group, Dahn Cong Vo a/k/a Don Vo, Katie Vo, Sean Tu, and Jin Gao (collectively, "Defendants"), alleging RICO and state law violations in connection with a Bitcoin mining business purportedly operating as a Ponzi scheme. (D.I. 1 at 1) Cryptocurrencies such as Bitcoin rely on a blockchain, which is a decentralized electronic ledger used to track the ownership and transfer of crypto assets in a secure manner. (*Id.* at ¶ 57) Significant computer processing power is needed to maintain the blockchain, and Bitcoin "miners" verify the blocks by completing a complicated math problem in exchange for a set amount of Bitcoin. (*Id.* at ¶¶ 58-62)

The conduct described in the complaint began in 2018, when Don Vo founded VBit Technologies Corp, VBit Mining LLC, and Advanced Mining Group (collectively, "VBit"). (*Id.* at ¶ 70) A VBit mining contract attached to the complaint characterizes VBit as a new type of cryptocurrency business in which customers purchase specific Bitcoin mining packages constituting different "levels," such as Copper, Silver, Gold, Platinum, Diamond, and Black Diamond. (*Id.*, Ex. 1 at ¶ 2.1) The mining packages included the purchase of hardware to engage in Bitcoin mining, measured by projected mining productivity known as "hash power." (*Id.* at ¶ 86)

VBit touted the advantages of its individualized mining packages, including installation and maintenance of the mining hardware, affordable electricity, and cooling capacity for the leased or purchased equipment. (*Id.* at ¶¶ 73-75) VBit offered customers additional ways to make money through its referral program, which effectively turned VBit customers into part of VBit's sales force to recruit new customers. (*Id.* at ¶¶ 99-101) But the complaint alleges that Defendants' offer of individualized, hardware-hosted mining services was a sham, and Defendants were instead engaged in cloud mining performed by a shared central server without

3

active management by the user. (*Id.* at ¶¶ 164-66) According to Plaintiffs, Defendants misappropriated their customers' funds to supply the Bitcoins appearing in Plaintiffs' virtual wallets. (*Id.* at ¶ 168)

On March 18, 2021, Dettmering entered into a contract for VBit's Black Diamond Package, which included a one-year agreement with VBit to lease computer server hashboard hardware with a buyout option in exchange for more than $110,000. (*Id.* at ¶¶ 89-90) Mangubat entered into a similar contract on December 3, 2021 to lease a Black Diamond Package hosted by VBit Mining for a period of two years at a total cost of more than $156,000. (*Id.* at ¶¶ 87-88)

VBit issued a press release on January 31, 2022 announcing its acquisition by Advanced Mining Group. (*Id.* at ¶¶ 138-39) Shortly thereafter, Don Vo announced he was stepping down as VBit's CEO due to health reasons, and Lillian Zhou held herself out as CEO of Advanced Mining Group and VBit. (*Id.* at ¶¶ 143, 152, 157) The complaint challenges the accuracy of VBit's press release, alleging that no business entity named Advanced Mining Group is registered to do business in any jurisdiction in the United States. (*Id.* at ¶ 145)

The market price of Bitcoin dropped precipitously in April of 2022. (*Id.* at ¶ 169) Beginning in May of 2022, VBit customers experienced delays in withdrawing Bitcoin from their virtual wallets. (*Id.* at ¶ 159) On June 1, 2022, VBit stopped processing all withdrawals, and Plaintiffs' virtual wallets remain frozen. (*Id.* at ¶¶ 161-62) Advanced Mining Group sent an email to customers on June 27, 2022, explaining that it could no longer service the U.S. market because the United States Securities and Exchange Commission ("SEC") had deemed VBit's products to be unregistered securities. (*Id.* at ¶ 172) On the same date, Advanced Mining Group closed its Philadelphia headquarters. (*Id.* at ¶ 177) Nonetheless, Advanced Mining Group's

4

website continued to offer mining packages listed as "sold out" on its website as of the time the complaint was filed. (*Id.* at ¶ 178)

Plaintiffs filed the complaint in this action on November 10, 2022, asserting ten causes of action: (I) RICO participation against all Defendants; (II) RICO conspiracy against all Defendants; (III) common law fraud against all Defendants; (IV) civil conspiracy against all Defendants; (V) conversion against all Defendants; (VI) violations of the Delaware Uniform Deceptive Trade Practices Act and Delaware Consumer Fraud Act against all Defendants; (VII) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law against all Defendants; (VIII) breach of contract against VBit; (IX) breach of the implied covenant of good faith and fair dealing against VBit; and (X) negligent misrepresentation against all Defendants. (*Id.* at ¶¶ 188-255) On January 13, 2023, defendants Jin Gao and Katie Vo filed the pending motions to dismiss the complaint. (D.I. 30; D.I. 33) Both Gao and Vo move to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6).[4] (D.I. 31 at 4-19; D.I. 34 at 12-26) Gao also asserts improper venue under Rule 12(b)(3), and Vo maintains that Plaintiffs lack Article III standing under Rule 12(b)(1). (D.I. 31 at 6; D.I. 34 at 7-12)

## II. DISCUSSION

### A. Standing

Rule 12(b)(1) permits dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A facial or factual challenge to constitutional standing is properly tested under Rule 12(b)(1). *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir.

---

[4] Neither Jin Gao nor Katie Vo challenges the sufficiency of the pleaded allegations at Counts VIII and IX of the complaint for breach of contract and breach of the implied covenant of good faith and fair dealing, respectively, which were brought only against VBit.

5

2020). Here, Katie Vo brings a factual challenge to Plaintiffs' constitutional standing because her motion to dismiss is supported by a declaration falling outside the scope of the pleadings. (D.I. 34 at 9; D.I. 35; D.I. 63 at 3) Vo alleges that "there is no 'concrete' allegation of damages asserted specifically against [her] anywhere in the Complaint." (D.I. 34 at 10) Instead, Vo argues that the complaint relies on her marital status to infer her involvement in the relevant conduct. (*Id.* at 11)

Plaintiffs correctly respond that Vo's position improperly shifts the focus of the standing analysis from Plaintiffs to Vo. (D.I. 41 at 8-9) Vo's focus on the lack of pleaded allegations specifically tied to her own individual conduct improperly attempts "to transform ordinary merits arguments about who is legally responsible for an injury into questions of jurisdiction." *Davis v. Wells Fargo*, 824 F.3d 333, 347 n.16 (3d Cir. 2016). Vo does not meaningfully dispute that the collective actions of Defendants in perpetuating the alleged fraud caused injury to Plaintiffs in the form of their frozen cryptocurrency accounts. (D.I. 1 at ¶¶ 194-97) The complaint plausibly alleges that Vo furthered the fraudulent enterprise through her role at VBit, thereby causing injury to Plaintiffs. (*Id.* at ¶ 193) These allegations are sufficient to support a causal connection between Plaintiffs' injury-in-fact and Vo's conduct, which is all that is required to satisfy the traceability factor. *Davis*, 824 F.3d at 347 n.16. Consequently, I recommend that the court deny Vo's 12(b)(1) motion to dismiss for lack of standing.

### B. Personal Jurisdiction

Vo and Gao both argue that the court lacks personal jurisdiction over them under the traditional Rule 12(b)(2) analysis because they are not residents of Delaware and have no minimum contacts with the state. (D.I. 33 at 5-6; D.I. 34 at 12-16) Plaintiffs respond that personal jurisdiction over Gao and Vo exists under the RICO statute. (D.I. 40 at 5-6)

6

For the reasons set forth at § II.D.1-2, *infra*, I recommend that the court dismiss Plaintiffs' claims for RICO violations at Counts I and II of the complaint because they are barred under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Adoption of this recommendation and a corresponding determination not to exercise supplemental jurisdiction over Plaintiffs' state law causes of action negates any basis for personal jurisdiction derived from the RICO statute and moots any other asserted grounds for the exercise of personal jurisdiction over Gao and Vo.

## C. Improper Venue

In a brief passage, Gao also moves to dismiss the claims against him under Rule 12(b)(3) for improper venue because he is not a party to the contracts between VBit and VBit's customers which contain a Delaware forum selection clause. (D.I. 31 at 6) Gao cites no case authority to support this as a proper basis for a Rule 12(b)(3) motion to dismiss. Courts considering a Rule 12(b)(3) motion to dismiss based on a forum selection clause must resolve any factual disputes and make all reasonable inferences in favor of the nonmoving party. *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1138-39 (9th Cir. 2004).

A forum selection clause may bind a nonparty to the contract if: (1) the forum selection clause is valid; (2) the non-signatory is a third-party beneficiary or closely related to the contract; and (3) the claims against the non-signatory arise from the non-signatory's status in relation to the contract. *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015). The allegations in the complaint reasonably support an inference that the forum selection clause binds Gao in this case. Specifically, the complaint alleges that Gao was a VBit executive and co-founder who actively recruited customers to enter into mining contracts and become recruiters themselves. (D.I. 1 at ¶¶ 81, 106-08) In exchange for his recruitment efforts regarding the

7

mining contracts, Gao received rewards such as a luxury car. (*Id.* at ¶¶ 136-37) Gao's alleged deception of customers entering into the mining contracts is central to the claims asserted against him in this litigation. (*Id.* at ¶ 193) Drawing all reasonable inferences in favor of Plaintiffs as the nonmoving parties, I recommend that the court deny Gao's Rule 12(b)(3) motion to dismiss for improper venue.

### D. Failure to State a Claim

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead

8

"simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### 1. Counts I and II: The PSLRA bar

Gao argues that Plaintiffs' federal claims for RICO violations at Counts I and II of the complaint should be dismissed because they are barred by the PSLRA. (D.I. 31 at 8-9) Citing Plaintiffs' own pleaded allegations in the complaint, Gao maintains that the mining packages constitute securities, and the RICO statute bars RICO claims based on "any conduct that would have been actionable as fraud in the purchase or sale of securities[.]" (*Id.*) (quoting 18 U.S.C. § 1964(c)).

Section 107 of the PSLRA amended 18 U.S.C. § 1964(c) to broadly prohibit "conduct that would have been actionable as fraud in the purchase or sale of securities" from being used as an underlying predicate act for a RICO claim under § 1962. *Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 157 (3d Cir. 1998); *see MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 278 (2d Cir. 2011) ("[T]he RICO Amendment is worded broadly and does not indicate that Congress intended that it be applied in [a] limited manner[.]"). The entire fraudulent scheme must be examined as a whole to determine whether the PSLRA bar applies. *See Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327-30 (3d Cir. 1999); *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 730-31 (D. Del. 2003). Thus, the court must determine whether the alleged Ponzi scheme described in the complaint could be actionable as fraud in the purchase or sale of securities.

In this case, the court must navigate uncharted waters as there is scant authority concerning litigation arising from Bitcoin mining packages. Having carefully considered the pleadings and developing law in this area, I recommend that the court grant Gao's motion to dismiss Counts I and II of the complaint because Defendants' alleged conduct would have been actionable as fraud in the purchase or sale of securities and is therefore subject to the PSLRA bar.

The complaint expressly describes Defendants' conduct as a violation of securities laws: "Plaintiffs and members of the Class sustained damages arising out of Defendants' common course of conduct in violation of federal and state securities laws as alleged herein." (D.I. 1 at ¶ 184) Plaintiffs characterize this pleaded allegation as "a stray and inadvertent reference to securities laws" and emphasize that no violations of securities laws were alleged as causes of action in the complaint. (D.I. 40 at 7 n.6) But the ramifications of this particular strain of inadvertence are significant. The record shows that interim class counsel for Plaintiffs has extensive experience in class actions and other complex litigation involving both RICO and securities claims, and counsel's description of the pre-suit investigation confirms their familiarity with the PSLRA bar.[5] (D.I. 51 at 6, 8-9) While the complaint's description of Defendants' conduct as a violation of securities laws may have been inadvertent at the outset, counsel's failure to catch such a critical allegation prior to filing the complaint suggests such pleading was not "stray" or "inadvertent" and was more than an oversight. As described more fully below, other allegations in the complaint, while less explicit, are also consistent with the

---

[5] In briefing on the motion to appoint interim co-lead and liaison counsel, Plaintiffs' counsel represented that they "extensively researched two important threshold legal issues prior to filing this action: (1) the application of the civil RICO laws to Defendants' conduct, and (2) whether the Bitcoin mining packages sold and promoted by the Defendants constitute securities." (D.I. 51 at 9)

characterization of the Bitcoin mining packages as securities. Plaintiffs' cursory and dismissive explanation for their purported mistaken word choice rings hollow. Plaintiffs' own complaint describes the alleged conduct as conduct that would have been actionable as fraud in the purchase and sale of securities, and the court must accept the allegations as true on a motion to dismiss. *See Bald Eagle*, 189 F.3d at 329.

   The complaint also acknowledges that the State of Washington determined Plaintiffs' mining packages "constitute[d] the offer and/or sale of a security" as defined under Washington state law, and VBit agreed to refund Washington residents for the original price of their mining packages pursuant to a Consent Order with the state. (*Id.* at ¶¶ 153-56) In a footnote, Plaintiffs aver the determination by the State of Washington is not dispositive because "[t]he definition of 'security' under the Securities Act of Washington is broader than the definition of 'security' under the Securities Act of 1933." (D.I. 1 at ¶ 153 n.6) But the definition of a "security" in the Securities Act of 1933 ("Securities Act") is intended to be "sufficiently broad to encompass virtually any instrument that might be sold as an investment." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990). The Supreme Court of Washington has acknowledged that "[t]he definition of a security in the Securities Act of Washington is derived substantially from the definition sections of the federal Securities Act of 1933." *McClellan v. Sundholm*, 574 P.2d 371, 373 (Wash. 1978). Included in the Securities Act's definition of "securities" are "investment contracts," and the federal definition of an "investment contract" has been adopted by Washington state courts. *Id.*; 15 U.S.C. § 77b(a)(1). Thus, while not dispositive, the complaint's discussion of the Consent Order supports a conclusion that Plaintiffs' RICO claims are barred under the PSLRA.

   The complaint's description of Defendants' mining packages further supports a conclusion that Plaintiffs' claims would be actionable as violations of the federal Securities Act.

11

The United States Supreme Court has defined an investment contract as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). "This definition embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *SEC v. Edwards*, 540 U.S. 389, 393 (2004) (internal quotations and citations omitted). Under the *Howey* test, an instrument qualifies as an investment contract if it entails: (1) an investment of money; (2) in a common enterprise; (3) with profits to come solely from the efforts of others. *S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 187 (3d Cir. 2000) (quoting *Howey*, 328 U.S. at 298-99). The analysis requires consideration not only of the terms of the offer, but also the plan of distribution and any economic inducements offered in promotional materials. *See Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) (citing *S.E.C. v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 352-53 (1943)).

Plaintiffs do not contest the first and third prongs of the *Howey* test, and the allegations in the complaint confirm that these two requirements are met. In satisfaction of the first prong, the complaint alleges that named Plaintiffs Dettmering and Mangubat invested $132,076 and $84,750, respectively, in the purchase of mining packages from Defendants. (D.I. 1 at ¶¶ 28-29; Ex. 1) As to the third prong, both the complaint and Plaintiffs' answering brief confirm that profits from the mining contracts were derived solely from the efforts of Defendants. According to the complaint, Plaintiffs would lease computer hardware hosted in a facility maintained by Defendants, "where the hardware would efficiently mine Bitcoin for Plaintiffs and the Class," and VBit offered "so-called 'hosting' services, which would enable customers to mine Bitcoin with little or no effort." (*Id.* at ¶¶ 8, 72) In their answering brief, Plaintiffs confirm that the

12

mining contracts "gave Defendants control of the purported goods and the only means of verification of their functionality, *i.e.* the 'virtual wallets' whose values were dependent on inputs supplied by Defendants." (D.I. 40 at 10 n.9) Thus, there is no reasonable dispute for purposes of this motion that Plaintiffs were passive investors who relinquished control over their funds to Defendants.

Plaintiffs focus their argument on the second "common enterprise" prong of the *Howey* test. In the Third Circuit, a common enterprise may be shown by "horizontal commonality," which is characterized by "a pooling of investors' contributions."[6] *S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 187-88 (3d Cir. 2000) (internal quotations and citations omitted). "Generally, pooling occurs when the funds received by the promoter through an offering are, essentially, reinvested by the promoter into the business" and "such reinvestment increases the value of the instrument offered." *Friel v. Dapper Labs, Inc.*, --- F. Supp. 3d ----, 2023 WL 2162747, at *11 (S.D.N.Y. Feb. 22, 2023).

Plaintiffs maintain that VBit's mining packages were not investments in a common enterprise because the contracts provided for individualized hardware leases and virtual wallets as opposed to a pooling of assets, and they did not disclose any pro-rata sharing of profits and losses among investors. (D.I. 40 at 8-9) But a review of the contract attached to the complaint indicates that the computational power of investors is pooled. The contract states that the investor is leasing an unspecified number of "Antminer S19 series computer server hashboards with an average of 880,000 GH/s computer computational power," instead of disclosing the

---

[6] The Securities and Exchange Commission ("SEC") has explained that it "does not require vertical or horizontal commonality *per se*, nor does it view a 'common enterprise' as a distinct element of the term 'investment contract.'" *Framework for "Investment Contract" Analysis of Digital Assets*, https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets (modified 3/8/2023).

13

specific amount of hashpower derived from individual machines purchased or leased by the investor. (D.I. 1, Ex. 1 at 1) This contract provision fits the complaint's description of "cloud mining" as "a form of cryptocurrency mining where participants in a 'mining pool' rent a quantity of hashrate power and earn a pro-rata share of any profits based on the amount of hashrate power rented." (*Id.* at ¶ 165)

The complaint's description of incentive programs aimed at Plaintiffs and other investors further supports a conclusion that the pleaded allegations satisfy the "common enterprise" element. The pleading alleges that Defendants told customers they could receive "hashrate bonuses" for recruiting new customers, explaining that a new customer buying a package with a hashrate of 100,000 GH/s would result in a bonus of 30,000 GH/s in hashrate power to the recruiting customer. (D.I. 1 at ¶¶ 113-17) Nothing in the complaint suggests that these hashrate bonuses were tied to specific, individualized machines. Instead, defining the bonus in terms of a quantity of hashrate power fits the complaint's description of pooled cloud mining. (*Id.* at ¶ 165)

Moreover, the complaint confirms that "Plaintiffs never received discrete, individualized mining equipment and services they paid for," and "the Bitcoins appearing in Plaintiffs' virtual wallets were in fact other victims' payments arbitrarily designated by Defendants as Plaintiffs' generated Bitcoins[.]" (*Id.* at ¶ 168) The economic reality of Plaintiffs' pooled investments supports the existence of a common enterprise, thereby bringing Defendants' mining packages within the definition of a "security." *See Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967) ("[I]n searching for the meaning and scope of the word 'security' . . . form should be disregarded for substance and the emphasis should be on economic reality."); *see also S.E.C. v. Dalius*, 2023 WL 3988425, at *8-9 (C.D. Cal. May 24, 2023) (finding common enterprise prong of *Howey* test was satisfied where terms of program suggested member payments did not depend on actions of

14

other members, but "economic realities" were such that members' fortunes were tied to each other).

Gao points to another civil action pending in this district which is based on the same set of facts but alleges violations of federal securities laws instead of a theory of liability based on violations of the RICO statue. (D.I. 31 at 9) (citing *Huntley v. VBit Techs. Corp.*, C.A. No. 22-1164-CFC-SRF (D. Del. Sept. 2, 2022)). In a footnote, Plaintiffs respond that the theory of liability in *Huntley* is not binding in this action. (D.I. 40 at 10 n.9) But the Third Circuit's decision in *Bald Eagle* lends credence to the argument. There, the court held that the plaintiffs' RICO complaint was barred under the PSLRA where the SEC had brought a securities action based on the same alleged Ponzi scheme at the heart of the RICO action. *See Bald Eagle*, 189 F.3d at 328. Similarly, the Eastern District of Pennsylvania held that allegations in a RICO complaint were actionable under a theory of securities fraud, and therefore subject to the PSLRA bar, where the same underlying financial improprieties were alleged in support of a complaint for securities fraud in a separate action. *See In re Ikon Office Sols., Inc. Secs. Litig.*, 86 F. Supp. 2d 481, 486-87 (E.D. Pa. 2000) (dismissing RICO claims based on PSLRA bar where a prior suit based on same allegations had been brought as a securities action).

As Gao acknowledges, there is no authority broadly categorizing cryptocurrency mining contracts as securities. (D.I. 55 at 2-4) Nonetheless, at least two jurisdictions have entered default judgments treating cryptocurrency mining contracts as investment contracts constituting securities. *See S.E.C. v. Sneed*, 2021 WL 4202171, at *7-9 (N.D. Tex. Sept. 10, 2021); *S.E.C. v. Homero Joshua Garza*, C.A. No. 3:15-1760-JAM, D.I. 41 (D. Conn. May 31, 2017). And for the reasons set forth above, the cryptocurrency mining contracts at issue in this case satisfy the *Howey* test for investment contracts based on the allegations in the complaint.

Plaintiffs cite a case from the District of Connecticut in which a jury concluded that the cryptocurrency mining contracts at issue were not securities. (D.I. 40 at 9-10) (citing *Audet v. Fraser*, 605 F. Supp. 3d 372 (D. Conn. 2022)). On post-trial motions, the court concluded that the jury's verdict was supported by evidence that the plaintiffs exercised individualized control over their mining investments. *Audet*, 605 F. Supp. 3d at 390.[7] Here, in contrast, Plaintiffs' complaint alleges that Defendants hosted and maintained control over Plaintiffs' equipment. (D.I. 1 at ¶¶ 92, 94) The *Audet* case's persuasive value is also diminished by the fact that the same set of circumstances formed the basis for the District of Connecticut's entry of default judgment on securities claims five years prior in *S.E.C. v. Homero Joshua Garza*, C.A. No. 3:15-1760-JAM. *See* Darren J. Sandler, *Citrus Groves in the Cloud: Is Cryptocurrency Cloud Mining a Security?*, 34 Santa Clara High Tech. L.J. 250, 280-83 (2018).

Gao also criticizes the *Audet* decision for tasking the jury with resolving whether a cryptocurrency mining contract constitutes a security. (D.I. 55 at 4) The ultimate issue of whether an instrument is a security is a question of law. *See Shaper v. Zadek*, 557 F. Supp. 3d 969, 975 (N.D. Cal. 2021) (citing *S.E.C. v. J.T. Wallenbrock & Assocs.*, 313 F.3d 532, 536 (9th Cir. 2002)). Nonetheless, the characterization of an instrument as a security raises questions of both law and fact. *Id.* at 976 (citing *Warfield v. Alaniz*, 569 F.3d 1015, 1019 (9th Cir. 2009)).

---

[7] Like the facts alleged here, the plaintiffs in *Audet* argued that a common enterprise existed because the defendant "never actually allocated the hashing power to the selected mining pools—it only pretended to—and that courts appropriately focus on economic reality when determining whether a particular product is an investment contract." *Audet*, 605 F. Supp. 3d at 391. The court rejected the plaintiffs' argument, explaining that "the *Howey* test focus[es] on what the buyers of the Products were led to expect about the nature of the Product." *Id.* In *Howey*, however, the Supreme Court defined an investment contract as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Howey*, 328 U.S. at 298-99. The "led to expect" language in *Howey* precedes the third requirement of the *Howey* test and does not pertain to the "common enterprise" requirement.

On a motion to dismiss, the court must assume the truth of the factual allegations in the complaint. For the reasons discussed, the pleaded allegations in the instant case would have been actionable under a theory of securities fraud, and Plaintiffs "cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading." *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 731 (D. Del. 2003); *see Clune v. Barry*, 2023 WL 2929388, at *8 (S.D.N.Y. Apr. 13, 2023) (explaining that delaying application of the PSLRA bar "runs contrary to [its] legislative intent . . . which was to 'prevent litigants from using artful pleading to bootstrap securities fraud cases into RICO cases, with their threat of treble damages.'" (quoting *MLSMK*, 651 F.3d at 274)).

### 2. Application of PSLRA bar to other Defendants

Although Gao is the only defendant seeking dismissal of Counts I and II under the PSLRA bar, application of the bar applies equally to the remaining Defendants in *Dettmering*. *See Eagletech Commc'ns Inc. v. Citigroup, Inc.*, 2008 WL 3166533, at *8 n.10 (S.D. Fla. June 27, 2008) (concluding that application of the PSLRA bar to the RICO claims "is a ruling that affects all defendants that are similarly situated," "including those that have not personally moved for dismissal or who have not been properly served."). Vo's motion to dismiss does not challenge the sufficiency of the complaint under the PSLRA bar. (D.I. 34) Nonetheless, dismissal of the RICO claims extends to Vo under this recommendation. *See Aubrey v. Barlin*, 2014 WL 1872298, at *5 (W.D. Tex. May 7, 2014) (dismissing *sua sponte* plaintiffs' RICO claims under the PSLRA bar against defendant who had not moved for dismissal on that basis). Consequently, I recommend that the court dismiss Vo under the PSLRA bar, along with the other *Dettmering* Defendants, and deny Vo's 12(b)(6) motion to dismiss on other grounds as moot.

Although the PSLRA bar was not raised as a basis for dismissal in *Eichler*,[8] I recommend that the court extend application of the PSLRA bar to the complaint in *Eichler*. The court may generally only dismiss a complaint *sua sponte* under Rule 12(b)(6) in two circumstances: (1) where the plaintiff is provided notice and an opportunity to respond; or (2) where it is clear that the plaintiff cannot prevail. *Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007). Here, both prongs of this disjunctive analysis are satisfied.

The *Eichler* Plaintiffs had notice of Gao's motion to dismiss under the PSLRA bar in *Dettmering*. *See Giles v. Volvo Trucks N. Am.*, 551 F. Supp. 2d 359, 369 (M.D. Pa. 2008) ("The notice and opportunity to be heard may be provided by the act of a single defendant who raises a defense applicable to all defendants."). Vo's motion to dismiss in *Eichler* was filed approximately two months after Vo and Gao's motions to dismiss were filed in *Dettmering*. (C.A. No. 22-1574-CFC-SRF, D.I. 31; C.A. No. 22-1482-CFC-SRF, D.I. 30; D.I. 33) A week after the motion was filed, the parties in *Eichler* filed a stipulation confirming that they were acquainted with the docket in *Dettmering*, and Plaintiffs expressed their intention to consolidate the two cases after resolution of the motions to dismiss. (C.A. No. 22-1574-CFC-SRF, D.I. 33 at 2 & n.1) Nonetheless, the *Eichler* Plaintiffs did not separately address the PSLRA bar in the two months between the filing of Gao's motion to dismiss and the deadline for the *Eichler* Plaintiffs' answering brief to Vo's motion to dismiss. Vo's failure to raise the PSLRA bar in the motion to dismiss does not alter the fact that Plaintiffs had an opportunity to address it where, as here, the case law confirms that the PSLRA bar extends to all similarly situated Defendants. *See Aubrey*, 2014 WL 1872298, at *5; *Eagletech*, 2008 WL 3166533, at *8 n.10.

---

[8] Although Gao is also a named defendant in *Eichler*, he never responded to the complaint in that matter. (D.I. 24)

Even if the court were to find that Plaintiffs had no notice or an opportunity to respond, the court may still dismiss the *Eichler* complaint *sua sponte* because the *Eichler* Plaintiffs cannot prevail on their RICO causes of action. *Bethea*, 248 F. App'x at 333. In the stipulation, the *Eichler* parties "agree[d] that the Court's opinion and order on Ms. Vo's motion regarding the *Dettmering* Complaint will have *res judicata* effect on the *Eichler* Complaint." (C.A. No. 22-1574-CFC-SRF) By consolidating Vo's briefing on the motion to dismiss with the *Dettmering* briefing and stipulating to the *res judicata* effect of the court's ruling in *Dettmering*, the parties have acknowledged the identity of the pleadings in the two actions. As such, Vo's dismissal in *Dettmering* applies equally to *Eichler* and also extends to the other *Eichler* Defendants. *See Aubrey*, 2014 WL 1872298, at *5; *Eagletech*, 2008 WL 3166533, at *8 n.10.

### 3. State law claims

For the reasons set forth at §§ II.D.1-2, *supra*, I recommend that the court dismiss Plaintiffs' RICO causes of action under the PSLRA bar. Should the court adopt this recommendation, the only remaining causes of action in these cases would be Plaintiffs' state law claims. I recommend that the court dismiss the remaining causes of action under 28 U.S.C. § 1367(c)(3), which provides that the district court may decline to exercise supplemental jurisdiction over a state law claim after dismissing all federal claims over which the court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 174 (3d Cir. 2009); *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 859 (D. Del. 2016) (explaining that "the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances" when all federal claims have been dismissed under Rule 12(b)(6) (internal citations omitted)).

## III. CONCLUSION

For the foregoing reasons, I recommend that the court GRANT Gao's motion to dismiss Counts I and II of the complaint without prejudice.[9] (D.I. 30) I further recommend that the court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. These recommendations, if adopted, would result in dismissal of all causes of action against all Defendants in both *Dettmering* and *Eichler*. Consequently, I recommend that the court DENY Vo's motion to dismiss as moot. (D.I. 33)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 27, 2023

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

---

[9] Although efforts to recast the pleaded allegations under RICO would likely be futile, this Report and Recommendation is not meant to preclude Plaintiffs from pursuing a civil action on their state law claims.