**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROSS DETTMERING, FRANCIS MANGUBAT, and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VO, SEAN TU, JIN GAO, and JOHN DOE INDIVIDUALS 1-10, and ABC COMPANIES 1-10,<br><br>Defendants. | ) | C.A. No. 22-1482-CFC-SRF<br>(Consolidated) |
| MICHAEL EICHLER, and all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VO, SEAN TU, JIN GAO, and JOHN DOE INDIVIDUALS 1-10, and ABC COMPANIES 1-10,<br><br>Defendants. | ) | C.A. No. 22-1574-CFC-SRF |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT JIN GAO'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP
Robert J. Kriner, Jr. (Del. Bar No. 2546)
Scott M. Tucker (Del. Bar No. 4925)
2711 Centerville Road, Suite 201
Wilmington, DE 19808
Tel: 302-656-2500
RobertKriner@chimicles.com
ScottTucker@chimicles.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

BONI, ZACK & SNYDER LLC
Michael J. Boni (admitted *pro hac vice*)
Joshua D. Snyder (admitted *pro hac vice*)
Benjamin J. Eichel (admitted *pro hac vice*)
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Tel: 610-822-0200
mboni@bonizack.com
jsnyder@bonizack.com
beichel@bonizack.com

LANGER, GROGAN & DIVER PC
Peter Leckman (admitted *pro hac vice*)
Mary Catherine Roper (admitted *pro hac vice*)
David Nagdeman (admitted *pro hac vice*)
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: 215-320-5660
pleckman@langergrogan.com
mroper@langergrogan.com
dnagdeman@langergrogan.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

SALTZ MONGELUZZI & BENDESKY P.C.
Patrick Howard (admitted *pro hac vice*)
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: (215) 575-3895
phoward@smbb.com

SPECTOR ROSEMAN & KODROFF, P.C.
Jeffrey J. Corrigan (admitted *pro hac vice*)
Jeffrey L. Spector (admitted *pro hac vice*)
Cary Zhang (admitted *pro hac vice*)
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: 215-496-0300
jcorrigan@srkattorneys.com
jspector@srkattorneys.com
czhang@srkattorneys.com

MCCANN, DILLON, JAFFE & LAMB, LLC
Michael Patrick Minuti
300 Delaware Avenue
Suite 805
Wilmington, DE 19801
Tel: 302-888-1221
mminuti@mccanninjurylaw.com

*Counsel for Plaintiff Michael Eichler and the Proposed Class*

# TABLE OF CONTENTS

**Page**


SUMMARY OF ARGUMENT ....1

NATURE AND STAGE OF THE PROCEEDINGS ....2

STATEMENT OF FACTS ....3

ARGUMENT ....5

I. Plaintiffs' RICO Claims (Counts I-II) are not Barred by 18 U.S.C. 1964(c) .5

A. The Mining Packages Do Not Involve a Pooling of Investors' Contributions and Distribution of Profits ....5

B. Mining Bitcoin Through Third Party "Mining Pools" Is Irrelevant for Analyzing a Common Enterprise ....8

C. The Mining Packages Must Be Analyzed at the Time They Were Offered to Customers ....9

D. The Presence of Untested Securities Claims in Other Litigation Is Irrelevant ....9

II. Plaintiffs Have Sufficiently Pleaded RICO Claims Against Mr. Gao ....10

A. Plaintiffs Have Sufficiently Pleaded that Mr. Gao Conducted or Directed a RICO Enterprise in Violation of 18 U.S.C. § 1962(c) ....10

B. Plaintiffs Have Sufficiently Pleaded That Mr. Gao Conspired in the RICO Enterprise in Violation of 18 U.S.C. § 1962(d) ....12

C. Plaintiffs' RICO Claims Against Mr. Gao are Pleaded with Particularity ....14

III. Plaintiffs' Claims for Fraud and Negligent Misrepresentation Against Mr. Gao Satisfy Rule 9(b) ....16

IV. Plaintiffs Allege a Civil Conspiracy Claim Against Mr. Gao ....18

V. Plaintiffs Allege a Conversion Claim Against Mr. Gao ....19

VI. Plaintiffs State Their Claims Against Mr. Gao for Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law........20

VII. This Court Has Subject Matter Jurisdiction over Plaintiffs' State Law Claims Pursuant to CAFA........21

CONCLUSION........21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adverio Pharma GmbH v. Alembic Pharms. Ltd.*, No. CV 18-73-LPS, 2019 WL 581618 (D. Del. Feb. 13, 2019) ....................19

*Aetna, Inc. v. Health Diagnostic Lab., Inc.*, No. 15-1868, 2015 WL 9460072 (E.D. Pa. Dec. 28, 2015) ....................18

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321 (3d Cir. 1999)....10

*Black v. Montgomery Cnty.*, 835 F.3d 358 (3d Cir. 2016) ....................12

*Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588 (E.D. Pa. 2010)....................20

*Buckley v. O'Hanlon*, No. 04-955 (GMS), 2007 WL 956947 (D. Del. Mar. 28, 2007) ....................17

*Comcast Spectacor L.P. v. Chubb & Son, Inc.*, No. 05-1507, 2006 WL 2302686 (E.D. Pa. Aug. 8, 2006)....................17

*Danganan v. Guardian Prot. Servs.*, 179 A.3d 9 (Pa. 2018)....................21

*Davis v. BAC Home Loans Servicing, L.P.*, No. 21-1713-CFC, 2022 WL 4535623 (D. Del. Sept. 28, 2022) ....................14

*ECB USA, Inc. v. Savencia*, S.A., No. 19-731-RGA-CJB, 2020 WL 11762200 (D. Del. July 10, 2020)....................18

*Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Servs.*, No. 08-2926, 2010 U.S. Dist. LEXIS 59196 (E.D. Pa. June 14, 2010)....................19

*Friel v. Dapper Labs, Inc.*, 657 F. Supp. 3d 422 (S.D.N.Y. 2023) ....................8

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)........ 15, 17

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010) ....................11

*Levert v. Phila. Int'l Records,* No. 04-1489, 2005 U.S. Dist. LEXIS 20309 (E.D. Pa. Sep. 14, 2005) .................... 20, 21

*Loduca v. WellPet LLC,* 549 F. Supp. 3d 391 (E.D. Pa. 2021) .................... 21

*Marine Bank v. Weaver*, 455 U.S. 551 (1982) .................... 9

*MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967 (7th Cir. 1995) .................... 11

*M-S Commodities, Inc.*, 457 F.2d 274 (7th Cir. 1972) .................... 6

*Prudential Ins. Co. of Am. v. Credit Suisse Secs. LLC*, No. 12-7242, 2013 WL 5467093 (D.N.J. Sept. 30, 2013) .................... 18

*Revak v. SEC Realty Corp.*, 18 F.3d 81 (2d Cir. 1994) .................... 7, 8

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) .................... 11

*Revzip, LLC v. McDonnell*, No. 11-CV-0458, 2020 WL 1929523 (W.D. Pa. Apr. 21, 2020) .................... 20

*Ruefenacht v. O'Halloran*, 737 F.2d 320, 338 (3d Cir. 1984) .................... 9

*S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180 (3d Cir. 2000) .................... 6, 8

*Salinas v. United States*, 522 U.S. 52 (1997) .................... 13

*SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) .................... 7, 8, 9, 10

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984) .................... 17

*Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001) .................... 13

*United States v. Pharis*, 298 F.3d 228 (3d Cir. 2002) .................... 15

*Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695 (3d Cir. 1995) .................... 20

**Statutes**

18 U.S.C. § 1962(c) .......... 11, 12
18 USC § 1964(c) .......... 2

## SUMMARY OF ARGUMENT

Plaintiffs Ross Dettmering, Francis Mangubat, and Michael Eichler (collectively, "Plaintiffs") submit this response in opposition to the motion to dismiss filed by Defendant Jin Gao ("Mr. Gao"). As alleged in the First Amended Class Action Complaint (D.I. 131, the "Complaint"), Defendants, including Mr. Gao, orchestrated an expansive fraudulent scheme that marketed and sold Bitcoin mining hardware packages that did not exist. Defendants operated this fraud through a RICO enterprise involving multiple business entities, employees, and salespeople associated with VBit Technologies Corp, VBit Mining, LLC, and Advanced Mining Group (collectively, "VBit"). Plaintiffs also bring common law and state statutory claims that are supplemental to the RICO claims. On behalf of a putative class of VBit's customers, Plaintiffs seek to remedy the injuries inflicted by Mr. Gao and his co-conspirators.

Mr. Gao raises a variety of challenges to the Complaint, but he does not dispute the existence of the underlying fraud. Nor could he. As outlined in the Complaint, VBit was a complete sham. Mr. Gao and the other VBit leaders hatched the scheme to take advantage of individuals who wanted to mine Bitcoin. Plaintiffs each lost at least tens of thousands of dollars, and classwide losses are likely in the tens of millions of dollars. As a co-founder of VBit, involved with VBit from at least 2018 through its announced sale to Advanced Mining in January 2022, Mr. Gao was

situated among VBit's inner circle. And by zealously marketing and selling the fake product, he played an integral role in driving up the number of victims and the amount of their losses. Mr. Gao's motion should be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

On November 10, 2022, Plaintiffs Mangubat and Dettmering filed their initial complaint against VBit, Dahn Cong Vo a/k/a Don Vo ("Mr. Vo"), Phuong D. Vo a/k/a Katie Vo ("Ms. Vo"), Sean Tu ("Mr. Tu"), and Mr. Gao. On December 6, 2022, Plaintiff Eichler filed his complaint against the same defendants (No. 1:22-cv-1574, D.I. 1) and Mr. Tu answered that complaint on February 28, 2023. *Id.*, D.I. 17.

VBit and Mr. Tu answered the Mangubat/Dettmering complaint on December 13, 2022. No. 1:22-cv-1482, D.I. 17, 18. Mr. Gao and Ms. Vo filed motions to dismiss on January 13, 2023. D.I. 30, 33. On July 27, 2023, Magistrate Judge Fallon issued a Report and Recommendation (the "R&R"), recommending that the Court dismiss the complaint in its entirety. D.I. 112. On August 10, 2023, Plaintiffs filed objections to the R&R (D.I. 118), arguing that Plaintiffs' RICO claims are not subject to the RICO securities bar (18 U.S.C. § 1964(c)) and that the Class Action Fairness Act ("CAFA") confers subject matter jurisdiction on the Court. Chief Judge Connolly overruled Plaintiffs' Objections on September 25, 2023. D.I. 128. Plaintiffs filed the Complaint on October 25, 2023. Mr. Gao and Ms. Vo filed motions to dismiss the Complaint (D.I. 140, 145), while Mr. Tu answered the

Complaint. D.I. 144. On November 6, 2023, the Court consolidated the Eichler and Mangubat/Dettmering actions "for all purposes up to and including trial." D.I. 136.

## STATEMENT OF FACTS

Mr. Gao founded VBit with Mr. Vo in 2018 and thereafter designed and executed VBit's fraudulent scheme. Compl. ¶¶ 44, 77, 84-88, 211. VBit purported to sell packages that included physical mining hardware and "hosting" services to maintain the hardware to mine Bitcoin. *Id.* ¶¶ 7, 8, 53, 76, 86. Defendants promised that hardware would generate a steady stream of Bitcoin that would flow into the customer's virtual wallet. *Id.* ¶¶ 7, 8.

Plaintiffs purchased mining packages from VBit in 2021 by entering into Defendants' uniform Payment and Hosting Agreement Contracts (the "Contracts"). *Id.* ¶¶ 7, 84, 96, 99-102; No. 22-cv-01574, D.I. 1, ¶¶ 86-88. The Contracts provide that VBit would sell or lease individualized mining equipment to Plaintiffs and provide the hosting facility, electricity, and internet access to operate Plaintiffs' mining equipment. Compl. ¶ 103. The Contracts also granted customers the option to purchase leased equipment for $1, plus shipping fees. *Id.* ¶ 107.

VBit grew rapidly, signing up over 15,000 customers worldwide by June 2022. *Id.* ¶ 115. VBit employees and executives, including Mr. Gao, posted videos on YouTube that detail lucrative recruiting incentives. *Id.* ¶ 120. The videos promised cash commissions, hashrate bonuses, luxury clothes, vacations, cars, and

homes. *Id.* ¶¶ 120-142. The aggressive recruitment efforts by Mr. Gao and others sustained and prolonged what was really a Ponzi scheme. *Id.* ¶¶ 115-142.

Mr. Gao and other VBit representatives shared their success stories on social media, luring in more victims. *Id.* ¶¶ 149-153. In September 2020, for example, VBit posted a picture of Mr. Gao in a VBit t-shirt posing next to a new $150,000 BMW sports car with a "VBit1" license plate. *Id.* ¶¶ 152-153. The caption illustrates that Mr. Gao was a central figure in spreading the false gospel of VBit's operations responsible for recruiting many of VBit's victims: "Congrats to our very own vice Chairman, Jin Gao, on his new ride! Thank you for your hard work and dedication! We're excited to see what's next." *Id.* ¶ 153.

VBit did not, however, actually lease or sell individualized Bitcoin mining hardware. *Id.* ¶ 11. Mr. Gao and other Defendants made false representations to market those packages, knowing VBit was fraudulent and *not* in fact supplying or servicing individualized mining hardware to its customers as promised. *Id.* ¶¶ 175-177.

The fraud ultimately became unsustainable. In late January 2022, VBit announced it had been acquired by an unregistered entity known as "Advanced Mining" for $105 million and would be led by a new CEO, Lillian Zhou. *Id.* ¶¶ 154, 158. But Lillian Zhou does not appear to be a real person and Advanced Mining is not a bona fide company. *Id.* ¶¶ 171-174. In June 2022, VBit stopped processing all

withdrawals of Bitcoin from its customers' virtual wallets, effectively freezing the Bitcoin purportedly held in its customers virtual wallets. *Id.* As of the filing of the Complaint, Plaintiffs and putative class members lack access to the Bitcoin VBit lead them to believe they had mined. *Id.* ¶ 191.

## ARGUMENT

### I. Plaintiffs' RICO Claims (Counts I-II) are not Barred by 18 U.S.C. 1964(c)

#### A. The Mining Packages Do Not Involve a Pooling of Investors' Contributions and Distribution of Profits

In his September 25, 2023 decision overruling Plaintiffs' Objections to the R&R, Chief Judge Connolly explained that the original complaint "contains allegations that plausibly imply that the mining packages purchased by plaintiffs did not involve a pooling of investors' contributions or a distribution of profits and losses among investors on a pro-rata basis," concluding that "[i]t could well be the case that Plaintiffs can plead a RICO claim that does not rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities." D.I. 128 at 4. Citing Plaintiff's inadvertently-stated allegation that Defendants' conduct violated the securities laws, Chief Judge Connolly found "that there are allegations in the [c]omplaint that plausibly imply an actionable theory of securities fraud." *Id.* at 3. That brief and undeveloped reference to the securities laws does not appear in the amended Complaint.

The allegations in the Complaint *do* show that the mining packages sold by Defendants lack "horizontal commonality," which requires "pooling of investors' contributions and distribution of profits and losses on a pro-rata basis among investors." *See S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 187-188 (3d Cir. 2000) (cleaned up). Plaintiffs' success in mining Bitcoin was not tied to "the success or failure" of other VBit customers and those customers' "success or failure . . . had no direct impact on the profitability of plaintiffs' contract[s]." *Milnarik v. M-S Commodities, Inc.*, 457 F.2d 274, 276-77 (7th Cir. 1972).

The Contract and the VBit website make clear that Plaintiffs leased (with the option to purchase) specific computer hardware. Compl. ¶¶ 108-109. For example, VBit advertised that a "Black Diamond Package" included "Eight Antminer S19j Pro Miner Machines [that] provide 800,000 Giga Hash per Second." Compl. ¶ 109. The Contracts promise the "use and leasing rights with a buyout option . . . of dedicated Antminer S19" mining equipment and Defendants represented that the Bitcoin mined by VBit customers' equipment would be distributed directly to their personal digital wallets. Compl. ¶¶ 112-113; D.I. 131-1 at 1.

Further, the Complaint nowhere alleges or implies that VBit engaged in cloud mining where investors "rent a quantity of hashrate power and earn a pro-rata share of any profits based on the amount of hashrate power rented." *See* D.I. 112 at 14. Indeed, the FAQs on VBit's website expressly disclaim any cloud mining activity,

unequivocally representing that "Advanced Mining is a hardware reseller offering hosting services. The consumer purchases actual ASIC hardware and NOT a cloud mining contract." Compl. ¶ 106. Similarly, there are no allegations suggesting that there was any pooling of investors' contributions or any distribution of profits. In short, the R&R's key finding that the Contracts describe cloud mining lacks support in the Complaint. *See* D.I. 112 at 13-14.

In *Revak v. SEC Realty Corp.*, 18 F.3d 81 (2d Cir. 1994), the Second Circuit addressed an analogous fact pattern, reversing a RICO dismissal under the securities bar for condominium units sold and serviced by a management company. *Id.* at 84. It found that there was no "horizontal commonality" because there was no profit sharing among the investors. *Id.* at 88. The court found that there was "broad vertical commonality" because the investors depended on the promoter's management services to earn profits but held that this was insufficient under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). And that to hold otherwise would improperly merge the second and third *Howey* prongs "into a single inquiry: whether the fortuity of the investments collectively is essentially dependent upon promoter expertise." *Id.* at 88 (cleaned up).

Just like the condo owners in *Revak*, VBit told its customers their profits would come from their own property (condos in *Revak* and computer hardware here), independent of any profits generated by other users, or any profits generated

by the operation of the business as a whole. Accordingly, no VBit customers invested in a "common enterprise."

### B. Mining Bitcoin Through Third Party "Mining Pools" Is Irrelevant for Analyzing a Common Enterprise

Defendant Gao argues that the existence of "mining pools" shows that VBit customers worked collectively to mine Bitcoin. D.I. 146 at 7. But this is not the kind of "pooling of investors' contributions" necessary to create a common enterprise. *See Infinity*, 212 F.3d at 188.

The pooling relevant for *Howey*, involves purchasers' funds being deployed in a collective effort and whose scaled reinvestment in some enterprise makes the enterprise as a whole more valuable such that the "units" of the enterprise purchased also increase in value to the benefit of the investors. *Friel v. Dapper Labs, Inc.*, 657 F. Supp. 3d 422, 436 (S.D.N.Y. 2023).

The "mining pools" at issue here, however, are not a pooling of VBit's customers' monetary contributions. Instead, it is a pooling of VBit customers' computing power with the computing power of millions of other Bitcoin miners' computing power, most of whom have no connection to Defendants. D.I. 131 ¶ 105. The mining pools exist independently of VBit and whether a mining pool itself is a security is irrelevant. *See id.*; D.I. 146 at 8. There can be no horizontal commonality where the pooling of investor contributions includes contributions by individuals with no connection to VBit.

### C. The Mining Packages Must Be Analyzed at the Time They Were Offered to Customers

The R&R cited the Supreme Court's reference to the "economic reality" as a basis to focus on the allegations of how Defendants operated the fraud, rather than to examine the objective terms under which the mining packages were offered and sold. Regardless of what Defendants actually provided (or failed to provide) to Plaintiffs, what matters for the *Howey* analysis is "what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect.'" *Marine Bank v. Weaver*, 455 U.S. 551, 555–56 (1982); *see Ruefenacht v. O'Halloran*, 737 F.2d 320, 338 (3d Cir. 1984) ("the Court's admonition to attend to economic reality simply instructed" that a court attend to substance over form, independent of the label attached to a transaction.). Accordingly, under *Howey* it is beside the point that instead of delivering on their promises, Defendants illegally combined Plaintiffs' funds and operated VBit as a Ponzi scheme. *See* R&R at 14.

### D. The Presence of Untested Securities Claims in Other Litigation Is Irrelevant

The Court also previously found it persuasive that plaintiffs in another related case brought securities claims, reasoning that the Third Circuit's decision in *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 329 (3d Cir. 1999) "lends credence to the argument," D.I. 112 at 15, but *Keystone* is not on point because the

plaintiffs in that case conceded that the instruments at issue were securities. *Id.* ("The School Districts allege that Black's Ponzi scheme was securities fraud."). That is not the case here and the consent decree the Securities Division for the State of Washington entered with VBit under Washington law provides no factual predicates for the Court to base any analysis of the factors of *Howey* on. No court, state or federal, has made any finding that support the agency's actions. Finally, it is notable that multiple Defendants with direct knowledge of VBit's products (VBit Technologies Corp., VBit Mining, LLC, and Sean Tu) filed answers to the original complaint and never raised any defense that the Mining Packages are securities.

## II. Plaintiffs Have Sufficiently Pleaded RICO Claims Against Mr. Gao

### A. Plaintiffs Have Sufficiently Pleaded that Mr. Gao Conducted or Directed a RICO Enterprise in Violation of 18 U.S.C. § 1962(c)

To establish liability under 18 U.S.C. § 1962(c), Plaintiffs need only plausibly allege that Mr. Gao "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs." In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court held that this statutory language means that a defendant must "have some part in directing [the enterprises's] affairs." *Id.* at 185. While the Complaint alleges that Mr. Gao was a co-founder of VBit and a central figure in the alleged scheme, the *Reves* Court expressly noted that "an enterprise also may be operated by lower-rung participants . . . who are under the direction of upper management." *Id.* at 184.

Applying *Reves,* the Third Circuit has held that § 1962(c) liability attaches when lower-rung members of an association-in-fact enterprise "knowingly implement[] decisions' by the enterprise's managers to commit crimes." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 378 (3d Cir. 2010) (cleaned up); *see also MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967, 979 (7th Cir. 1995) ("Thus, even if [Defendants] A–B and FDC may have been reluctant participants in a scheme devised by 'upper management,' they still knowingly implemented management's decisions, thereby enabling the enterprise to achieve its goals."). In *In re Ins. Brokerage*, 618 F.3d at 378-79, the Third Circuit held that plaintiffs alleged § 1962(c) claims for on-the-ground individuals who placed insurance contracts and solicited rigged bids from insurers as part of a massive, overlapping series of hub-and-spoke conspiracies between a few central brokerage firms and insurance companies.[1] The liable individuals were not masterminds of the enterprise, nor did they supervise others within it. *Id.*

---

[1] Mr. Gao relies on a case from the District Court for the North District of Texas in arguing that a more stringent standard governs under § 1962(c). D.I. 146, at 11-12 (quoting *Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 70 (N.D. Tex. 2018)). However, the Fifth Circuit has an additional pleading requirement of "supervisory involvement" for a § 1962(c) claim, *Ranieri*, 336 F. Supp. at 177, which is not the Third Circuit standard, and, in any event, given his leadership role, Mr. Gao would be liable even under the Fifth Circuit's heightened standard.

At this stage of the proceedings, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief." *Black v. Montgomery Cnty.*, 835 F.3d 358, 364 (3d Cir. 2016). The Complaint alleges that Mr. Gao co-founded VBit, and held himself out as the Vice Chairman of Advanced Mining and the Vice President of VBit. Compl. ¶ 44. The Complaint also alleges that he was involved in VBit's sales and affiliate program. *Id.* ¶¶ 106, 108, 123-24. The Complaint plausibly alleges Mr. Gao operated, directed, or managed the fraudulent Bitcoin mining enterprise in its vital efforts to obtain new victims. The fraudulent Bitcoin mining enterprise was actually a Ponzi scheme where the money of new customers went to payout older customers, thus making this role in the enterprise critical to the continuance of the fraud. *Id.* ¶¶ 1, 10, 13, 115-48.

### B. Plaintiffs Have Sufficiently Pleaded That Mr. Gao Conspired in the RICO Enterprise in Violation of 18 U.S.C. § 1962(d)

In order to establish a § 1962(d) claim under RICO's conspiracy provision, Plaintiffs must plausibly allege that Mr. Gao "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2011) (citing *Salinas v. United States*, 522 U.S. 52 (1997)). The standard for liability as a RICO conspirator is substantially less onerous than the one for a person who "operated and managed" a RICO enterprise.

*See id.* at 65. A plaintiff need not plead that a defendant personally agreed to commit a predicate act or participate in the management of the enterprise. *Id.* at 66. "The plain implication of the standard set forth in *Salinas* is that one who opts into or participates in a conspiracy is liable for the acts of his co-conspirators which violate section 1962(c) even if the defendant did not personally agree to do, or to conspire with respect to, *any* particular element." *Smith*, 247 F.3d at 537. Mr. Gao, as Vice Chairman of both Advanced Mining and VBit, was extensively involved in sales of the fraudulent Bitcoin mining packages and recruiting new victims to "purchase" the packages for years. Compl. ¶¶ 81, 82, 106, 108, 136-37. It is more than reasonable to infer Mr. Gao knew that the scheme was fraudulent. This is sufficient for RICO conspirator liability.

Invoking the out-of-circuit *Ranieri* case and two cases from the Eastern District of Pennsylvania, Mr. Gao argues that Plaintiffs have an additional burden to plead an objective agreement to conspire and commit the predicate acts of fraud. D.I. 146, at 14. But the Third Circuit merely requires allegations that the alleged conduct in the enterprise was "purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity." *Smith*, 247 F.3d at 537 n.11. Chief Judge Connolly recently restated this standard: "[c]onspiracy liability under § 1962(d) … is governed by the 'general principles of criminal conspiracy law' which requires only that the defendant "share[s] a common purpose' with his co-conspirators and

'knowingly agrees to facilitate a scheme, which includes the operation or management of a RICO enterprise.'" *Davis v. BAC Home Loans Servicing, L.P.*, No. 21-1713-CFC, 2022 WL 4535623, at *6 (D. Del. Sept. 28, 2022).

The Complaint alleges Mr. Gao knew of and agreed to facilitate the fraudulent Bitcoin mining enterprise. He was a co-founder of the company, publicly held himself out as the Vice Chairman of Advanced Mining and of VBit, and held a leadership role in VBit's sales and affiliate program. Compl. ¶¶ 44, 106, 108, 136-37. Based on Plaintiffs' Complaint, it is more than plausible that Mr. Gao shared a common purpose with and knowingly agreed to facilitate the fraudulent Bitcoin mining enterprise through his role as a co-founder and on the sales and marketing team, which had an essential role in drawing new victims to the enterprise.

### C. Plaintiffs' RICO Claims Against Mr. Gao are Pleaded with Particularity

Finally, Mr. Gao objects that Plaintiffs have failed to allege predicate acts of mail or wire fraud with sufficient specificity under Rule 9(b). The principal purpose of Rule 9(b)'s heightened pleading standard is to provide defendants with notice of the claims against them. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). Given the nature of this fraud and the fact that it has been widely reported in the press, there is no doubt that Mr. Gao is well-apprised that he is accused of directing and conspiring in an enterprise to market and sell Bitcoin mining hardware that did not exist. *See* Compl. ¶¶ 127, 135. "The elements of [mail

and wire fraud] are: (1) a scheme to defraud; (2) use of the mails [or wires] to further that scheme; and (3) fraudulent intent." *United States v. Pharis*, 298 F.3d 228, 233–34 (3d Cir. 2002). Plaintiffs' allegations state this fraud with specificity:

> Defendants fraudulently induced their customers to purchase products that did not exist. Further, Defendants developed a multi-level marketing scheme to create the income necessary to pay earlier customers. In so doing, Defendants utilized the internet, credit card wire transactions, ACH bank wire transactions, and the promise of interstate shipping services to carry out their fraud.

Compl. ¶ 16.

The rest of the Complaint provides more details concerning the scheme and the conspirators. *See e.g. id.* ¶¶ 1 (the "scheme promised the sales, leasing, and servicing of specialized computer hardware to produce Bitcoins for customers, but in reality functioned as a massive Ponzi scheme that paid out the promised Bitcoins only as long as new victims provided additional funds to do so."), 163, 164. The dates of Plaintiffs' purchases have been pleaded, *id.* ¶¶ 87-90, as well as when their virtual wallets were frozen and the rug pulled out from under them. *Id.* ¶ 162. The alleged fraud even includes various sub-frauds that illustrate intent, also pleaded with specificity, including a multi-level marketing scam to attract new victims, *id.*

¶¶ 98-125, and a fake sale of the company to try to dodge responsibility. *Id.* ¶¶ 138-152.[2]

### III. Plaintiffs' Claims for Fraud and Negligent Misrepresentation Against Mr. Gao Satisfy Rule 9(b)

"The Third Circuit has stated that plaintiffs must plead the circumstances of the alleged fraud such that defendants may be placed on notice" and "plaintiffs may use any alternative method of 'injecting precision and some measure of substantiation' into the allegations of fraud." *Buckley v. O'Hanlon*, No. 04-955 (GMS), 2007 WL 956947, at *9 (D. Del. Mar. 28, 2007) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

> Where there are multiple defendants, a plaintiff must plead predicate acts with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud but *the requirements of Rule 9(b) may be relaxed where factual information is exclusively within the opposing party's knowledge or control.*

*Comcast Spectacor L.P. v. Chubb & Son, Inc.*, No. 05-1507, 2006 WL 2302686, at

---

[2] Notably, in a case "where the factual information is peculiarly within the defendant's knowledge or control," such as this one where Defendants maintained sole possession of the supposed hardware and exercised exclusive control over the information that went to victims about their supposedly mined Bitcoins, the Third Circuit has suggested that "courts should be 'sensitive' to the fact that application of the Rule prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud" and that therefore "the normally rigorous pleading rule has been relaxed" in such cases. *In re Burlington Coat Factory,* 114 F.3d at 1418 (cleaned up).

*6 n.12 (E.D. Pa. Aug. 8, 2006) (emphasis added; cleaned up).

The Complaint alleges an elaborate scheme involving the sale of fraudulent bitcoin mining packages and the promotion of those packages, which enriched the Defendants, including Mr. Gao specifically. *See* Compl. ¶ 153. As discussed above, the Complaint's allegations are detailed and explain Mr. Gao's particular role in the fraudulent conspiracy.

The Complaint also alleges false statements attributable to Mr. Gao. He promoted VBit's mining packages and sold them despite knowing that they were not what they purported to be. These allegations satisfy Rule 9(b) by establishing Mr. Gao's role in the alleged fraud. *See Aetna, Inc. v. Health Diagnostic Lab., Inc.*, No. 15-1868, 2015 WL 9460072, at *4 (E.D. Pa. Dec. 28, 2015) (holding that the complaint satisfied Rule 9(b) where it "set forth the entire scheme . . . and informed [individual] defendants of their alleged integral role in the scheme."); *Prudential Ins. Co. of Am. v. Credit Suisse Secs. LLC*, No. 12-7242, 2013 WL 5467093, at *19 (D.N.J. Sept. 30, 2013) (declining to dismiss fraud claims where the complaint "describe[d] each defendant's respective roles" in the underlying business, alleged which defendants were allegedly involved in the purported fraudulent practice, and stated "how their respective roles put them in a position to make and/or know about the [fraud]").

For these same reasons, the Complaint complies with Rule 8 and does not

engage in "improper lumping." Unlike the cases cited by Mr. Gao, the Complaint here includes specific allegations and gives clear notice of Defendant's Gao's role. *See e.g. ECB USA, Inc. v. Savencia*, S.A., No. 19-731-RGA-CJB, 2020 WL 11762200, at *22 (D. Del. July 10, 2020) (improper lumping reflecting lack of distinction between two defendants' roles); *Adverio Pharma GmbH v. Alembic Pharms. Ltd.*, No. CV 18-73-LPS, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019) (dismissing complaint as to one defendant where there was no "plausible allegation" supporting a claim of patent infringement).

## IV. Plaintiffs Allege a Civil Conspiracy Claim Against Mr. Gao

The elements of a conspiracy claim are "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Servs.*, No. 08-2926, 2010 U.S. Dist. LEXIS 59196, at *14 (E.D. Pa. June 14, 2010). Unlike the allegations relating to the underlying fraud, which must comply with Rule 9(b), the elements of conspiracy need only satisfy notice pleading standards. *Id.* at *15.

The Complaint alleges that Mr. Gao participated in a scheme to defraud the Plaintiffs by promoting the fictitious mining packages all the while concealing the true nature of the products and services sold. Compl. ¶¶ 84, 123, 125, 152-53, 220(b).

Mr. Gao took overt acts in pursuance of the conspiracy by successfully promoting the mining packages that he knew to be fraudulent. *See e.g.,* Compl. ¶¶ 84, 87, 123. As a result, the Complaint alleges not only that Mr. Gao knew about the fraud, but that he participated in it and took overt acts in furtherance of the conspiracy. *See Revzip, LLC v. McDonnell*, No. 11-CV-0458, 2020 WL 1929523, *11 (W.D. Pa. Apr. 21, 2020) (concluding that the plaintiffs stated a claim of conspiracy where they alleged that the defendant acted with others to steal trade secrets).

## V. Plaintiffs Allege a Conversion Claim Against Mr. Gao

Under Pennsylvania law, conversion is the "deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Univ. Prem. Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995).

The Complaint alleges that through their fraudulent enterprise Mr. Gao participated in misappropriating funds, Bitcoin, and Bitcoin mining equipment belonging to the Plaintiffs, had a role in freezing their virtual wallets, and converting the Bitcoin stored in their virtual wallets. Compl. ¶¶ 235-238. Plaintiffs have accordingly alleged that Mr. Gao deprived Plaintiffs of their "right of property in, or use or possession of, a chattel," without their consent "and without lawful

justification." *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 622 (E.D. Pa. 2010).

The conversion claim against Mr. Gao is not precluded by Plaintiffs' contract claims against VBit, because Mr. Gao is not a party to any contract with the Plaintiffs. *See Levert v. Phila. Int'l Records,* No. 04-1489, 2005 U.S. Dist. LEXIS 20309, at *10 (E.D. Pa. Sep. 14, 2005) (rejecting argument that conversion claim should be dismissed due to the existence of a contract where the defendant was not a party to the contract).

## VI. Plaintiffs State Their Claims Against Mr. Gao for Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Loduca v. WellPet LLC,* 549 F. Supp. 3d 391, 399 (E.D. Pa. 2021). As a Pennsylvania resident that is alleged to have participated in fraudulent acts in the conduct of trade or commerce with a Pennsylvania based company, the UTPCPL applies to Mr. Gao and there is no requirement that Plaintiffs bring UTPCPL claims in Pennsylvania courts. *See Danganan v. Guardian Prot. Servs*., 179 A.3d 9, 17 (Pa. 2018).

Finally, this venue is the appropriate forum for Plaintiffs' UTPCPL claim because Defendants VBit Tech. and VBit Mining reside in Delaware. *See* 28 U.S.C. § 1391(b)(1).

### VII. This Court Has Subject Matter Jurisdiction over Plaintiffs' State Law Claims Pursuant to CAFA

CAFA vests district courts with original jurisdiction of any class action where the aggregate claims exceed $5 million and there is minimal diversity. 28 U.S.C § 1332(d). CAFA jurisdiction exists here where the aggregate amount in controversy exceeds $5 million and the number of members of the proposed Class exceeds 100. *Id.*; Compl. ¶ 25. Mr. Gao has not argued to the contrary.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should deny Mr. Gao's Motion to Dismiss.

Dated: December 20, 2023 By: *<u>/s/ Scott M. Tucker</u>*

CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP
Robert J. Kriner, Jr. (Del. Bar No. 2546)
Scott M. Tucker (Del. Bar No. 4925)
2711 Centerville Road, Suite 201
Wilmington, DE 19808
Tel: 302-656-2500
RobertKriner@chimicles.com
ScottTucker@chimicles.com
*Liaison Counsel for Plaintiffs and the Proposed Class*

BONI, ZACK & SNYDER LLC
Michael J. Boni (admitted *pro hac vice*)
Joshua D. Snyder (admitted *pro hac vice*)
Benjamin J. Eichel (admitted *pro hac vice*)
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Tel: 610-822-0200
mboni@bonizack.com
jsnyder@bonizack.com
beichel@bonizack.com

LANGER, GROGAN & DIVER PC
Peter Leckman (admitted *pro hac vice*)
Mary Catherine Roper (admitted *pro hac vice*)
David Nagdeman (admitted *pro hac vice*)
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: 215-320-5660
pleckman@langergrogan.com
mroper@langergrogan.com
dnagdeman@langergrogan.com

*Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

SALTZ MONGELUZZI & BENDESKY P.C.
Patrick Howard (admitted *pro hac vice*)
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone (215) 575-3895
phoward@smbb.com

SPECTOR ROSEMAN & KODROFF, P.C.
Jeffrey J. Corrigan (admitted *pro hac vice*)
Jeffrey L. Spector (admitted *pro hac vice*)
Cary Zhang (admitted *pro hac vice*)
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: 215-496-0300
jcorrigan@srkattorneys.com
jspector@srkattorneys.com
czhang@srkattorneys.com

McCann, Dillon, Jaffe & Lamb, LLC
Michael Patrick Minuti, Esq.
300 Delaware Avenue
Suite 805
Wilmington, DE 19801
Tel: 302-888-1221
mminuti@mccanninjurylaw.com

*Attorneys for Plaintiff Michael Eichler and the Proposed Class*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Brief in Opposition to Defendant Jin Gao's Motion to Dismiss complies with the type, font, and word requirements set forth in the Court's Standing Order Regarding Briefing In All Cases. The text of the brief, including footnotes, was prepared in 14-point Times New Roman font and contains 4,999 words.

*/s/ Scott M. Tucker*
Scott M. Tucker

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2023 I caused the foregoing Plaintiffs' Brief in Opposition to Jin Gao's Motion to Dismiss to be served on all counsel of record via ECF.

*/s/ Scott M. Tucker*
Scott M. Tucker