# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROSS DETTMERING, FRANCIS MANGUBAT, and all other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, SEAN TU, JIN GAO, PHUONG D. VO a/k/a KATIE VO, and JOHN DOE INDIVIDUALS 1-10, and ABC COMPANIES 1-10, <br><br> Defendants. | C.A. No. 22-1482-JLH-SRF |
| MICHAEL EICHLER, and all other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, SEAN TU, JIN GAO, PHUONG D. VO a/k/a KATIE VO, and JOHN DOE INDIVIDUALS 1-10, and ABC COMPANIES 1-10, <br><br> Defendants. | C.A. No. 22-1574-JLH-SRF |

**MEMORANDUM ORDER**

Pending before the Court are Defendants Jin Gao's (D.I. 175) and Phuong D. Vo's (D.I. 174) Objections to the Magistrate Judge's August 1, 2024 Report and Recommendation (C.A. No. 22-1482, D.I. 171; C.A. No. 22-1574, D.I. 54 ("R&R")).[1] Both Defendants moved to dismiss (D.I. 140, 145) the First Amended Complaint (D.I. 131 ("FAC")), and the R&R recommended that those motions be denied. I have reviewed the objected-to portions of the R&R *de novo*. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). For the reasons outlined below, the Court OVERRULES the objections and ADOPTS the R&R.

Because I write for the parties, I assume familiarity with the case, the Court's prior rulings (*see, e.g.*, D.I. 112, 128, 171), and the basics of cryptocurrency. I will recite only the law and factual allegations necessary for my conclusions. In brief, the FAC alleges that the Defendants orchestrated a fraudulent scheme—essentially a Ponzi scheme—by offering to sell or lease computer hardware used to mine cryptocurrency. Instead of fulfilling those promises, Defendants misappropriated customer funds for themselves and used new customer funds to pay earlier customers. The FAC asserts two counts under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1962, 1964, and various state law claims.

Defendants Gao and Vo argue that the R&R erred in not recommending dismissal of the RICO claims because those claims are barred by the Private Securities Litigation and Reform Act (PSLRA), 18 U.S.C. § 1964(c), which expressly precludes a party from using securities fraud as a predicate act for a RICO claim. *See* 18 U.S.C. § 1964(c) ("[N]o person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.").

The R&R rejected that argument, explaining as follows:

---

[1] Unless otherwise noted, all docket citations are to C.A. No. 22-1482.

> [T]he FAC describes the mining packages and hosting services sold by Defendants in terms that do not satisfy the definition of a security under federal law. In *S.E.C. v. W.J. Howey Co.*, the Supreme Court explained that determining whether an investment contract is a security depends on "whether the scheme involves [1] an investment of money [2] in a common enterprise [3] with profits to come solely from the efforts of others." 328 U.S. 293, 301 (1946).
>
> The pleaded averments in the FAC plausibly imply that the mining packages bought by Plaintiffs do not satisfy the common enterprise requirement, which involves "horizontal commonality" characterized by "a pooling of investors' contributions and distribution of profits and losses on a pro-rata basis among investors." *S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 187-88 (3d Cir. 2000) (internal quotation marks and citations omitted). Specifically, the FAC alleges that Plaintiffs leased computer hardware with an option to purchase, and Plaintiffs' profits were derived from their individual use of their own hardware. (D.I. 131 at ¶¶ 106-09, 112-13) Although Plaintiffs' computational resources were pooled with those of other cryptocurrency miners to form "mining pools," these groupings were not limited to VBit customers, they had no bearing on the distribution of profits and losses, and they were used only "to strengthen the probability of successfully mining for cryptocurrency." (*Id.* at ¶ 105) Because these allegations do not rely upon conduct that would have been actionable as fraud in the purchase or sale of securities, I recommend that the court decline to apply the PSLRA bar.

(R&R at 8.) Having reviewed the issue *de novo*, I agree with the R&R that the RICO claims should not be dismissed.

Defendant Gao contends that the R&R erred because the conduct alleged in the FAC satisfies the "common enterprise" element of the *Howey* test and, therefore, the conduct alleged is actionable under the securities laws and not actionable under RICO. However, I agree with the R&R that the FAC alleges sufficient facts to support a plausible inference that the packages were not "investment contracts" because they do not involve a "common enterprise." Defendant Gao may well be right that many cryptocurrency mining arrangements known as "cloud mining," wherein "a person pays another person or entity to engage in cryptocurrency mining on their behalf

3

and receives the transaction fees, cryptocurrency[,] or a portion thereof that is generated from such mining efforts," qualify as common enterprises under the *Howey* test, especially those arrangements that involve pooling investors' contributions and distributing profits and losses to investors on a pro rata basis. *See* Darren J. Sandler, *Citrus Groves in the Cloud: Is Cryptocurrency Cloud Mining a Security?*, 34 Santa Clara High Tech. L.J. 250 (2018). But—notwithstanding the reference in the FAC to a "mining pool"—the FAC alleges facts making it at least plausible that the arrangement here does not qualify as a common enterprise as defined by the Third Circuit. The FAC alleges that Defendants sold "Mining Packages," that included (a) the sale or lease of customer-specific computer hardware used to mine Bitcoin, and (b) hosting services that power the hardware and connect it to the network. (FAC ¶¶ 53, 75, 103–105, 111, 192–98.) It further alleges that, in response to the question "Is Advanced Mining a cloud mining company?," the "FAQ" page of the Advanced Mining website states, "No, Advanced Mining is a hardware reseller offering hosting services. The consumer purchases actual ASIC hardware and NOT a cloud mining contract. Customers can choose to utilize our superior hosting services or have their hardware shipped to them, subject to shipping and handling charges." (FAC ¶ 106.) The FAC also alleges facts making it plausible that customers had control over the use of their individual hardware for mining activities and that their profits were not correlated with those of other customers:

> 75. [] VBit advertised that it would host its customers' individualized computer hardware in its data centers and that its customers would control the extent of their participation in the mining of Bitcoin, and in exchange the customers would be responsible for "hosting" costs.
>
> . . . .

> 103. Under the Contract, VBit and Advanced Mining represented that they would be utilizing individualized mining equipment for the benefit of Plaintiffs and the Class:
>
>> The first monthly payment will be due 30 days after the first day **your equipment is installed and actively running**.
>
> Ex. A at 1 (emphasis added).
>
>> **Service.**
>> 1.1 Facility. Service provider will provide server hosting facility, electrical power, and Internet access to Customer at Service Provider's and partner facilities (the "Facility") for the purpose of **installing, maintaining and operating Customer's leased or owned servers** and ASIC chips (the "Equipment"), which may be updated from time to time to add or delete Equipment with written notification to the Customer.
>
> *Id.* at 3 (emphasis added).
>
> 104. The Contracts also provided that the customers had the ability to allocate their computational power to their desired mining pool and gave them the right to change their desired pool at any time. *Id.*
>
> 105. A mining pool is a group of cryptocurrency miners who combine their computational resources over a network to strengthen the probability of successfully mining for cryptocurrency. *Id.* at 4. A mining pool could include other VBit customers, but it also might not.

(FAC ¶¶ 53, 75, 103–105.)

Defendant Gao cites cases and articles concluding that certain types of mining arrangements constitute common enterprises. But those arrangements, unlike the arrangement plausibly alleged here, involved pooling of investors' contributions and distribution of profits and losses among investors. Moreover, I agree with the Magistrate Judge that the FAC's references to "mining pools" does not necessarily mean that this was a common enterprise under the *Howey* test, particularly since the FAC plausibly alleges that pooling was optional and that customers could allocate their computing power to a mining pool that did not include VBit customers.

The Court is cognizant of the Supreme Court's directive that, when conducting the *Howey* analysis, "form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967). But whether an arrangement qualifies as an investment contract is a fact-specific inquiry and, at this stage of the case, viewing the FAC in the light most favorable to Plaintiffs, it is plausible that the arrangement alleged does not amount to an investment contract. Accordingly, the Court will overrule Defendants Gao's and Vo's objections to the R&R on the basis that the FAC only alleges an arrangement that amounts to an investment contract.[2]

Defendant Vo next objects to the R&R's conclusion that the FAC fails to satisfy the Rule 8(a) notice requirement. I disagree. The FAC contains specific allegations regarding Defendant Vo's involvement in and knowledge of the allegedly fraudulent scheme. (FAC ¶¶ 89–95.) Those allegations are sufficient to put Defendant Vo on notice of the alleged conduct. That the FAC also uses the term "Defendants" generally does not negate that notice.

Defendant Vo next contends that the R&R should have recommended dismissal of the RICO participation claim against her because it does not satisfy Rule 9(b). Assuming that compliance with Rule 9(b) is required, the FAC complies. It alleges the timeline of the fraudulent scheme, including when particular misrepresentations and predicate acts occurred (FAC ¶¶ 17–18, 20, 70, 77, 80, 87, 91, 99, 101, 115, 149, 155, 171, 173–74, 179, 182, 186–191, 210, 219), what misrepresentations were made to whom (FAC ¶¶ 7–11, 16, 18, 70–80, 84–85, 96–114, 169–70, 175–78, 182–84, 186–191), why (FAC ¶¶ 12, 19, 21, 68, 131, 143, 208), and how Defendant Vo participated in the fraudulent scheme (FAC ¶¶ 39–40, 89–95, 211, 213–14). *See City of Warren*

---

[2] Defendants Gao and Vo also argue that, if the RICO claims are dismissed, the Court lacks personal jurisdiction over them. The Court need not address that argument because the RICO claims will not be dismissed.

*Pol. & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 681 (3d Cir. 2023) ("Rule 9(b) . . . requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after *Twombly* must make relief plausible . . . ." (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009))).

Defendant Vo next argues that the R&R erred in concluding that the FAC stated a RICO conspiracy claim against her. I disagree. To state a RICO conspiracy claim, the FAC must allege facts "sufficient to describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy." *The Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 36 (3d Cir. 2015) (quoting *Rose v. Bartle*, 871 F.2d 331, 336 (3d Cir. 1989)). The FAC does just that. It plausibly alleges the general composition of the conspiracy and its objectives. (*See, e.g.*, FAC ¶¶ 1, 7–22, 30–46, 175–81, 218–22.) And it alleges that Defendant Vo knew of those objectives, was aware of the alleged scheme to defraud customers, and acted in furtherance of that scheme. (FAC ¶¶ 39–40, 89–95, 211, 213–14.)

Defendant Vo next contends that the R&R erred in concluding that the FAC states a civil conspiracy claim against her. She argues that the FAC fails to state a civil conspiracy claim because it "fails to allege any facts that state that Ms. Vo sold, or engaged in conduct to sell, any products to any customers." (D.I. 174 at 6.) That argument rests on the flawed premise that Plaintiffs were required to allege Defendant Vo's personal interaction with customers to state a civil conspiracy claim against her. Defendant Vo cites no authority for that proposition, and the Court is aware of none. Moreover, the FAC plausibly alleges several acts by Defendant Vo that could qualify as an overt act in furtherance of the alleged conspiracy. (*See, e.g.*, FAC ¶¶ 90 (alleging that Defendant Vo oversaw and trained the "administrative support team" that liaised with customers in furtherance of the alleged fraudulent conspiracy), 92 (alleging that Defendant

Vo "operated the main interface between VBit and customers and was responsible for misrepresentations made to customers by the VBit support team to maintain the fraudulent scheme")).

Defendant Vo next contends that the R&R erroneously concluded that the FAC states a claim for conversion against her. I again disagree. The FAC's specific allegations of Defendant Vo's involvement in the fraudulent scheme, including her receipt of cryptocurrency from VBit's cryptocurrency account (FAC ¶¶ 89–95), are sufficient to put Defendant Vo on notice of the conversion claim and raise a reasonable expectation that discovery will reveal evidence of it.

Finally, Defendant Vo challenges the R&R's conclusion that the FAC states a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Her briefing on this issue was sparse. (D.I. 174 at 7–8.) Reviewing the issue *de novo*, I agree with the R&R that the FAC states a UTPCPL claim against Defendant Vo.

Accordingly, this 8th day of November, 2024, IT IS HEREBY ORDERED THAT:

1. Defendant Gao's Objections (D.I. 175) are OVERRULED;
2. Defendant Vo's Objections (D.I. 174) are OVERRULED;
3. The Report and Recommendation (C.A. No. 22-1482, D.I. 171; C.A. No. 22-1574, D.I. 54) is ADOPTED;
4. Defendant Gao's Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to State a Claim (D.I. 145) is DENIED;
5. Defendant Vo's Motion to Dismiss (D.I. 140) is DENIED; and
6. Plaintiffs' Motions for Leave to File Sur-Reply Briefs (D.I. 153, 155) are DENIED.

                                                                                                           The Honorable Jennifer L. Hall
                                                                                                           UNITED STATES DISTRICT JUDGE