IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROSS DETTMERING, FRANCIS,      :
MANGUBAT, and all other similarly   :
situated individuals,           :
                               :
            Plaintiffs,         :
                               :
    v.                          :    C.A. No.: 1:22-cv-01482-JLH-SRF
                               :
VBIT TECHNOLOGIES CORP.,       :
VBIT MINING LLC, ADVANCED      :
MINING GROUP, DANH CONG VO     :
a/k/a DON VO, KATIE VOE, SEAN  :
TU, JIN GAO, LILLIAN ZHAO,     :
JOHN DOE INDIVIDUALS 1-10,     :
and ABC COMPANIES 1-10,        :
                               :
            Defendants.         :

**DEFENDANT JIN GAO'S OPPOSITION TO PLAINTIFFS' MOTION
FOR LEAVE TO FILE AMENDED AND CONSOLIDATED COMPLAINT**

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Samuel T. Hirzel, II (# 4415)
Emily A. Letcher (# 6560)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law
eletcher@hegh.law

*Attorneys for Defendant Jin Gao*

## INTRODUCTION AND SUMMARY OF THE ARGUMENTS

Plaintiffs' Motion for Leave to File Amended and Consolidated Complaint (D.I. 259) ("Motion") is both procedurally and substantively flawed and meritless and should be denied. Plaintiffs are attempting, after the close of discovery, to assert file a second amended complaint with a new claim against Defendant Jin Gao ("Gao") for fraudulent transfers and seeking to void certain transfers under the Pennsylvania Uniform Voidable Transfers Act (12 Pa. C.S.A. § 5104) ("PUVTA").[1] Not only is the Motion untimely and otherwise procedurally improper, but it lacks any merit because it seeks to void transactions that are not even "transfers" under the PUVTA.

This Court should deny Plaintiffs' Motion because Plaintiffs are attempting to add a new claim, which is factually and legally distinct from the claims asserted against Gao to date, well after the discovery deadline and they provide no justification for doing so. On July 21, 2025, this Court granted Defendants' motion to modify the scheduling order (D.I. 235), extending the discovery deadline from July 25, 2025, to September 5, 2025. On September 22, 2025, Plaintiffs moved for leave to amend their complaint for a second time, seeking to add a claim under Pennsylvania's Voidable Transfer Act ("PUVTA") relating to Bitcoin withdrawals made by Gao from his personal VBit digital wallet, which were "transferred" to himself, and a stock redemption involving a non-party, VBit DC, for a portion of Gao's interest in that company. Plaintiffs admit that the withdrawals and stock redemption were discovered before the discovery deadline and offer no explanation as to why the claim was not timely brought.

As discussed below, Plaintiffs' proposed PUTVA claim is futile because it involves no "transfer" under the Act, there is no precedent for such application, and the amendment should not

---

[1] Plaintiffs' proposed amended complaint also seeks to assert a separate claim under the PUVTA against Defendant Katie Vo to void purported fraudulent transfers allegedly involving her. That claim involves distinct factual allegations that are not applicable to Gao and, accordingly, that proposed claim against Ms. Vo is not addressed in this brief.

be allowed on that ground alone.  However, assuming *arguendo* this Court determines otherwise, the PUVTA claim would require distinct and nuanced analyses of its elements and numerous factors and would demand extensive fact discovery, not the least of which would include an assessment of withdrawals from VBit wallets during the same time period by other persons, specifically including the named Plaintiffs and other members of the putative class.[2]  Plaintiffs falsely claim that the underlying facts have already been discovered and therefore will have no prejudicial effect on Gao, However, Plaintiffs' argument completely fails to address 1) why this claim was not brought earlier in this case, as is explicitly required by the Federal Rules of Civil Procedure, 2) the need for discovery relating to all of the eleven factors to be considered under the PUVTA, as relates not only to Gao, but to all Plaintiffs and putative class members, and 3) overlooks the extensive delay, time and cost that would be spent on this claim.

## LEGAL STANDARD

Plaintiffs' Motion should be denied for failure to comply with the standards of Federal Rules 15 and 16 as well as Local Rule 16.4 regarding extending deadlines in this District.

Federal Rule of Civil Procedure 16(b)(4) states that a discovery schedule "may be modified only for good cause and with the judge's consent." Fed. R. C. P. 16(b)(4). When a party moves to amend or add a party after a scheduling order deadline has passed, Rule 16(b)(4) of the Federal Rules of Civil Procedure applies, placing the burden of proving "good cause" for missing the deadline on the moving party. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) ("A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard."). To establish good cause, a moving party must

---

[2] As discussed in greater detail below, some of the Plaintiffs withdrew Bitcoins from their VBit wallets during the same time period in which  Gao made withdrawals.  Plaintiff Francis Mangubat testified that he made numerous withdrawals during this same time period and "transferred" his Bitcoins to his wallets at other crypto platforms.

demonstrate that, despite its diligence, the proposed claims could not have been reasonably sought in a timely manner. *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 371 (D. Del. 2009); *Venetec Inter., Inc. v. Nexus Med*., LLC, 541 F.Supp.2d 612, 618 (D. Del. 2008). Failure to show "good cause" for amendments proposed after the close of discovery is grounds for denial, and the court need not examine the movant's Rule 15(a) argument. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84–85 (3d Cir. 2010); *E. Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000); *Premier*, 970 F.3d at 318.

Rule 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. C. P. 15(a)(2). The court should not grant leave where there exists: (1) undue delay in amending the pleading; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies in previous amendments; (4) undue prejudice to the nonmoving party of allowing the amendment; and (5) futility of the amendment. *Foman v. Davis,* 371 U.S. 178, 182 (1962).

Further, Local Rule 16.4 provides that a request for an extension of deadlines for completion of discovery or postponement of the trial shall be made by motion or stipulation *prior to* expiration of the date deadline, and shall include the following: (a) The reasons for the request; and (b) Either a supporting affidavit by the requesting counsel's client or a certification that counsel has sent a copy of the request to the client. LCvR-16.4.

Finally, in addition to being untimely and procedurally barred, the proposed additional claim sought to be asserted against Gao cannot legally be sustained under the PUTVA and, accordingly, the proposed second amended complaint should not be allowed due to its futility.

## ARGUMENT

### A.    PLAINTIFF FAILED TO PROVE "GOOD CAUSE" REQUIRED BY RULE 16B.

Plaintiffs' total failure to plead "good cause" for bringing their Motion past the discovery deadline alone supports denial of its motion to amend. Rule 16(b)(4) places the burden on the moving party to prove that they have "good cause" for their failure to meet the predetermined scheduling order deadline. Fed. R. C. P. 16(b)(4). The standard under Rule 16(b) is stricter than that of Rule 15(a) and requires a specific showing that, despite the movant's diligence, they could not make the amendment before the deadline passed. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). The Third Circuit is clear that utter failure to mention good cause in a motion to amend is grounds for denial, even when the argument is added in a reply brief. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 318 (3d Cir. 2020). "[S]cheduling orders are at the heart of case management. If they can be disregarded without a specific showing of good cause, their utility will be severely impaired." *Koplove v. Ford Motor Co*., 795 F.2d 15, 18 (3d Cir. 1986).

Proving good cause requires a showing of diligence, which is itself a strict standard and requires a specific explanation of facts that give rise to the claim and why the facts could not have been obtained earlier. *E. Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000). If the movant discovered the facts that lead to a claim before the deadline, the movant was presumptively not diligent, even if the facts arose shortly before the deadline. *Venetec Inter., Inc. v. Nexus Med*., LLC, 541 F.Supp.2d 612, 622 (D. Del. 2008) (denying motion to amend where nonmoving party added claim shortly before deadline and moving party attempted to add similar claim in response) *compare S. Track & Pump, Inc. v. Terex Corp*., 722 F.Supp.2d 509, 521–22 (D. Del. 2010) (allowing amendment after deadline because relevant facts became available only after

4

deadline had passed).

   *Premier* is directly on point. In *Premier*, the plaintiff moved to amend its complaint and add a party after discovery closed, arguing that the liberal standard of Rule 15(a) permitted addition of such claim and failing to mention the Rule 16(b)(4) standard. *Premier*, 970 F.3d at 318. Importantly, plaintiff sought amendment based on facts discovered during a deposition that took place *after* the deadline had passed. *Id.* The District Court denied the motion for leave to amend, citing Premier's "utter failure to establish good cause" and finding that Premier forfeited the argument by not including it in the original motion, despite their attempt to include it in a reply brief. *Id.* As in *Premier*, Plaintiff's motion completely fails to mention Rule 12(b)(4) or "good cause" and should be denied, as the diligence argument is forfeited.

   Even if Plaintiffs are given the opportunity to prove diligence in their reply brief (which they should not be afforded), their arguments will fail. This case is complicated and highly litigious, involving multiple theories of relief and amendments to the original pleadings, suggesting that there was plenty of opportunity to add the claim. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 85 (3d Cir. 2010). Plaintiffs themselves admit that "the factual predicates of these claims are substantially the same as the claims in the operative FAC," acknowledging that the withdrawals and share purchases allegedly giving rise to the PUVTA claim were known by, or at least available to, Plaintiff when they made their original complaint. (Motion, p. 5). At the very latest, the withdrawals and stock redemption were known to Plaintiffs at Mr. Gao's deposition on August 12, 2025, 24 days before the September 5, 2025 discovery deadline. (D.I. 235; D.I. 245). In fact, these facts were known to Plaintiffs long before this time as they had received documents evidencing all of these transactions long before the deposition and introduced documentary evidence of the transactions during the deposition. *See* Deposition of Jin Gao ("Gao

Dep."), 259:15-262:24; Gao Dep. Ex. 35, attached hereto as Exhibit "A". In fact, Plaintiffs'

counsel was in possession of this information sufficiently in advance of Gao's deposition that they

were able to compile the information and prepare a spreadsheet of Gao's history of withdrawals

from his VBit wallet in advance of his deposition. *Id.* Again, no explanation is provided as to

why the withdrawals from the VBit wallet and the stock redemption were not challenged

previously.

In Plaintiffs' original complaint, dated November 10, 2022, Plaintiffs mention alleged

issues with withdrawals from their virtual wallets, the same wallets they now allege were used to

make voidable transfers by Mr. Gao. (D.I. 1, ¶159-163). Even if Plaintiffs were not aware of Mr.

Gao's withdrawals at that time, they had ample opportunity to discover them, and provide no

excuse otherwise. Proof of good cause is a prerequisite to analysis of Rule 15(a) and Plaintiff's

complete failure to include such proof warrants denial of the Motion.

**B.      PLAINTIFF'S AMENDMENT SHOULD BE DENIED UNDER RULE 15(a).**

Plaintiffs cite Rule 15(a)'s "liberal nature" but evade its major exceptions, which are

widely recognized and often litigated in the Third Circuit. While undue prejudice to the nonmovant

is the "touchstone for denial of an amendment," *any* of the following may also be the basis for a

denial: (1) undue delay; (2) bad faith or dilatory motive; (3) or futility of amendment. *Panetta v.*

*SAP Am., Inc.*, 294 Fed. Appx. 715, 717–18 (3d Cir. 2008).

**1.      Plaintiffs' second amended complaint should be denied because Defendant
          Gao would be unduly prejudiced by the addition of a Pennsylvania Voidable
          Transfer Act (12 Pa.C.S. § 5104(a)(1)) claim.**

Substantial or undue prejudice to the non-moving party is a sufficient ground for denial of

leave to amend. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

Specifically, the Court will consider "whether allowing an amendment would result in additional

discovery, cost, and preparation to defend against new facts or new theories." *Id.* Furthermore, amendments which are "not simple, nor minor" and which expand the legal and factual bases to encompass whole new areas of inquiry are considered prejudicial. *In re ML-Lee Acquisition Fund II, L.P. & ML-Lee Acquisition Fund (Ret. Accounts) II, L.P. Sec. Litig.*, 848 F.Supp. 527, 568 (D. Del. 1994). "There comes a time when the Defendants and the Court are entitled to know upon what grounds the litigation is to proceed". *Id.*

Allowing Plaintiffs' proposed additional claim would require an extensive application of the PUVTA, a complex statute that raises new legal and factual issues not previously at issue during the scheduled discovery period. For example, the parties would be forced to determine whether the PUVTA's definition of "transfers" even applies to Gao's withdrawals from his personal VBit wallet. Further, the PUVTA requires a showing of either: (1) actual intent to hinder, delay or defraud a creditor; or (2) the transfer was undertaken for less than equivalent value while the debtor was insolvent. 12 Pa.C.S.A. § 5104. The PUVTA lists eleven (11) different factors that the court may consider when determining if the above elements are met. *Id.* While this case previously involved discovery about VBit and its conduct relating to its customers, Gao's actual intent regarding these transactions or whether they were undertaken for less than fair value while Gao was insolvent are whole new areas of inquiry not previously considered. Determining Gao's liability under the statute would require evidence about the two elements and their eleven factors, necessitating extensive discovery and cost to the Defendant. Notably, the proposed amended complaint does not reference or address any of these factors to be considered in relation to the fraudulent intent of which Gao is accused. When the proposed amendments constitute a claim involving actual fraud, such as a fraudulent conveyance based on actual fraud, the heightened Rule 9 pleading standard applies. *See Burt v. Key Trading LLC*, 2014 WL 5437070, at *4 (D.N.J. Oct.

22, 2014*) (Rule 9 pleading standard applies to fraudulent transfer).

Furthermore, such discovery would not be limited to Gao's conduct.  Any assessment of Gao's conduct must be taken in conjunction with the identical actions of others who withdrew Bitcoins from the VBit wallets during the same time period.  In this regard, it is notable that hundreds, if not thousands of putative class members withdrew Bitcoins from their VBit wallets at the same time as Gao.  This, ironically, includes the named Plaintiffs.  For comparison sake, consider the testimony of Plaintiff Mangubat, who testified as follows when asked during his deposition about withdrawals he made from his VBit wallet during the same time period as Gao's withdrawals:

> Q.    I asked about making withdrawals of your Bitcoin prior to the time that the ability to withdraw was suspended.  Prior to that time, approximately how many bitcoins did you withdraw from your VBit wallet from inception until your last withdrawal?
>
> A    I don't recall.· I think Josh has the number.
>
> Q.    How often did you make withdrawals?
>
> A.    Once every two, three, four weeks.
>
> Q.    What was the purpose of making those withdrawals?
>
> A.    Just to move it into my personal account.
>
> Q.    Why -- I'm sorry, why did you want it into your personal account instead of your VBit account?
>
> A.    Just because it's a personal account, and no particular reason, really.
>
> **Q.    Did you find anything wrong with the fact that you chose to move the bitcoins from your VBit wallet to your personal – to your personal account, elsewhere?**
>
> **A.    I don't.· It's, for me, the comparison is keeping rent money on Venmo.· Do I keep it on Venmo or do I move it to Chase Bank or Vista's Bank?· There's no specific reason for moving it, it's kind of just whenever I feel like it, and that's the same way that I handled -- I compare Advanced Mining to my**

**Venmo account where I receive rents, and I just move it whenever I wanted
with no specific reason as to why I would want to move it.**

Q.      Did you tell anybody that you made withdrawals from the VBit accounts
that you were doing it?

A.      Never.

Q.      Did you ask permission from anybody about, is it okay for me to move
Bitcoin from my VBit wallet to my personal wallet?

A.      No.

Q.      Did you ask permission of your father or your brother or any of your
friends?

A.      No.

Q.      Did you even discuss with them the fact that you were doing that, meaning
that you were moving Bitcoin from your VBit wallet to your personal accounts
outside of VBit?

A.      No.

Q.      Why not?· Didn't you think it was important to tell them that you were
moving VBit currency out of VBit?

MR. SNYDER          Objection to form.

A.      No.· Why?

Q.      I'm asking you.· When you say "why," what do you mean by that?

A.      I was wondering the context as to why you were asking the question,
because I did not feel it was relevant to letting anyone else know why I'm moving
my money.

Q.      **And you feel that you or anybody else then had bitcoins in their VBit
wallet had the freedom to do that at their choosing; right**?

MR. SNYDER:          Objection to form.

A.      **Yes.**

*See* Deposition of Francis Mangubat ("Mangubat Dep."), 254:17-257:6 (emphasis added),

attached hereto as Exhibit "B."

The PUVTA contains various defenses for good faith transferees and specific remedies available to creditors with various burdens of proof. 12 Pa.C.S.A. § 5108.  In summary, the PUVTA is no simple statute, and its enforcement requires specific analyses and fact finding that has not previously been considered and which would require extensive additional discovery.

### 2.    Plaintiffs motion to add a PUVTA claim is the result of undue delay and should not be granted.

"The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay. *Adams*, 739 F.2d at 868. In fact, delay alone is an insufficient ground to deny leave to amend. *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n.*, 573 F.2d 820, 823 (3d Cir. 1978). However, 'at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party.' *Adams*, 739 F.2d at 868. Delay may become undue when a movant has had previous opportunities to amend a complaint." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). "The question of undue delay requires that we focus on the movant's reason for not amending sooner." *Id.*; *Adams*, 739 F.2d at 868. Plaintiffs' amendment comes nearly three (3) years after action was filed (November 10, 2022) and nearly two (2) years after the complaint was previously amended (October 25, 2023), and Plaintiffs provide no explanation as to why the amendment was not previously sought. (D.I. 1; D.I. 131); *see Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (affirming denial of motion for leave to amend where the amendment was sought three years after the original complaint and two years after the second amended complaint).

Further, according to Plaintiffs, "[t]he factual predicates of these claims are substantially the same as claims in the operative FAC," suggesting undue delay in bringing this PUVTA claim.

*Panetta v. SAP Am., Inc.*, 294 Fed. Appx. 715, 718 (3d Cir. 2008) (affirming denial of motion to amend where plaintiff learned about claim after close of discovery because cause of action arose from same set of facts as claims previously pled); *In re Vertis Holdings, Inc.*, 536 B.R. 589, 613 (Bankr. D. Del. 2015), *aff'd*, AP 12-51176-CSS, 2016 WL 7031282 (D. Del. Nov. 30, 2016) (denying motion to amend where plaintiff repeatedly stated that its proposed Amended Complaint was based on same facts as its Complaint). Beyond briefly mentioning the August 2025 depositions, Plaintiffs offer no explanation as to why they are only now bringing the PUVTA claim or why the claims were unavailable at earlier stages of this litigation.

Finally, this case has a trial date set for May 18, 2026, and this amendment would require investigation into whole new theories of recovery. *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 106 F.Supp.2d 737, 745 (D.N.J. 2000) (where a trial date is set, an amendment that requires significant new preparation suggests prejudice); *Elf Atochem N. Am., Inc. v. United States*, 161 F.R.D. 300, 302 (E.D. Pa. 1995) (finding motion untimely where discovery was "virtually complete" and trial was looming close). The addition of these claims at this time is the result of undue delay and has "become prejudicial," placing an unfair burden on Defendant.

### 3. Plaintiffs were pleased with the results of their purchases of the Bitcoin mining packages and experienced no problems withdrawing Bitcoins prior to June 2022 when all wallets were frozen and mining activity stopped.

In addition to withdrawing Bitcoins from their own VBit wallets during the same time period they complain about Gao making similar withdrawals, the named Plaintiffs experienced no problems and were happy and pleased with their purchases of mining packages until Advanced Mining froze their Bitcoin wallets and stopped mining activities in or around June 2022. Accordingly, Gao had no reason to suspect any claims would be asserted against him by Plaintiffs. If the proposed second amended complaint is allowed, discovery would be required as to whether

the withdrawals were made with "actual intent to hinder, delay or defraud and creditor" (§ 5104(a)(1)) as well as the eleven factors identified under 12 Pa.C.S.A. § 5104(b), including but not limited to § 5104(b)(4) ("before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit").  In this regard, it is instructive that the Plaintiffs were not only not experiencing any problems but that they were pleased with their purchase of mining packages during the relevant time period raised by the proposed amended claim.  For example, Plaintiff Mangubat testified as follows:

> Q.    Do you recall telling us that you made numerous withdrawals of Bitcoin every two, three, four weeks while the account was available for withdrawals; do you recall that?
>
> A.    I believe I was withdrawing Bitcoin and whatever I withdrew, with Josh has that figure, what I did not withdraw was half a Bitcoin left in the account.
>
> Q.    And do you believe that the total of the withdrawals that you did make exceeded the half of a Bitcoin that was left?
>
> A.    I don't know the amount, but I think it would have exceeded that, yes.
>
> Q.    And prior to the time that the wallet was frozen, and it's mining activity stopped, you were happy with the results of the mining packages that you had purchased; correct?
>
> MR. SNYDER:        Objection to form.
>
> A.    Happy until VBit froze the mining and the -- and the withdrawals.
>
> Q.    And other than the problems that started in or around June of 2022, did you ever have any other problems with the Bitcoin mining packages that you had acquired?
>
> MR. SNYDER:        Objection to form.
>
> A.    So problems were around mid 2022 when VBit stopped the withdrawals and stopped mining.
>
> Q.    I understand.· Prior to that time, had you experienced any problems with VBit Advanced Mining with the mining packages that you had purchased?

MR. SNYDER:        Objection to form.

A.      I did not have any problems prior to the points where they stopped.

*See e.g.,* Mangubat Dep., 269:22-271:6, attached hereto as Exhibit "C."

Gao will be prejudiced severely unless fulsome discovery regarding all of these factors can be conducted to refute the proposed second amended complaint.  Gao will be more prejudiced by having to incur the time and expense associated with such discovery at this late stage

**4.      Plaintiffs' PUVTA claim is objectively futile and should not be allowed.**

In assessing "futility," a district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997); *Bailey v. Sullivan,* 885 F.2d 52, 59 (3d Cir.1989) ("[N]o purpose would be served by allowing [an amendment] to the complaint to add a challenge which would be dismissed."). Courts look only to the complaint and cannot rely on outside evidence when analyzing futility. *Miller v. Beneficial Mgmt. Corp.*, 844 F.Supp. 990, 1001 (D.N.J. 1993).

Plaintiffs' proposed PUVTA claims fail on their face and should not be allowed. First, Plaintiffs fail to establish that Gao's withdrawals from his Bitcoin wallet qualify as "transfers" under the PUVTA. "[W]e hold that the language of PUVTA is clear and unambiguous that, to be eligible for relief under section 5104, a plaintiff must first establish that there was a 'transfer' of an 'asset' that applies." *TD Bank, N.A. v. Andreasyan*, 328 A.3d 527 (Pa. Super. Ct. 2024). The PUVTA definition of "transfer" is "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, **of <u>disposing of or parting with</u> an asset or an interest in an asset**." 12 Pa.C.S.A. § 5101 (emphasis added). The definition is derived from Bankruptcy Code § 101. *Id*. at

comment 16. While the Third Circuit has not determined if withdrawals from one personal account and deposited into another personal account are considered "transfers", other circuits have found that deposits by a debtor into his own unrestricted checking account in the regular course of business are not "transfers." *In re Whitley*, 848 F.3d 205, 208–09 (4th Cir. 2017) (citing numerous cases for support and reasoning that "[w]hen the debtor is still free to access those funds at will, the requisite 'disposing of' or 'parting with' property has not occurred; there has not been a 'transfer' within the meaning of § 101(54).'"); *Matter of Prescott*, 805 F.2d 719, 729 (7th Cir. 1986) (finding no "transfer" because a deposit subject to withdrawal at depositor's will does not deplete bankruptcy estate); *In re Tenderloin Health*, 849 F.3d 1231, 1244 (9th Cir. 2017) (same); *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1303 (11th Cir. 2020) (Ponzi schemers did not "transfer" funds because they maintained control over the accounts despite withdrawing funds, writing countless checks, making several purchases, and initiating wire transfers).

Looking only at Plaintiffs' proposed second amended Complaint, Plaintiffs completely failed to even address whether Gao's withdrawals of his own Bitcoin qualify as "transfers" under the PUVTA. In fact, Gao maintained control and unrestricted access to his bitcoins after his withdrawals. If anything, the withdrawals gave him more control over his assets and certainly did not deplete his estate in any potentially contrived notion of attempts to deprive potential creditors (who did not even exist at the time of the withdrawals). In essence, Gao's conduct simply does not fall under the purview of the Act because he did not dispose of or lose control of any assets—he simply withdrew them from his own account and moved them to another account owned and controlled by him.

Further, Plaintiffs state that their PUVTA claim is based solely on previously obtained evidence to prove that there is no prejudice in adding this claim but fail to recognize that none of

the Act's elements or factors have been proven by previous discovery. Plaintiffs' motion generally states that "any discovery that would be required to defend against the [PUVTA] claims should have already been taken in order to defend against the operative claims that Defendants conspired in the operation of a [Ponzi scheme]." (Motion, p. 7). Plaintiffs fail to allege any facts or evidence, if any exists, that purports to establish the specific elements or factors listed in the PUVTA.

Plaintiffs PUVTA claims relating to the stock redemption also fail. The purpose of the PUVTA is to prevent diminutions of the debtor's estate that effect distributions of funds to creditors by voiding transactions where the debtor receives less than fair value for their assets. *Toff v. Vlahakis*, 112 A.2d 340, 343 (Pa. 1955) (interpreting the PUVTA's previous "fair consideration" language); *Fid. Bond & Mortgage Co. v. Brand*, 371 B.R. 708, 716 (E.D. Pa. 2007) (finding no "reasonably equivalent value" where the debtor received less than fair market value). See *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990) ("[T]he purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate."). Plaintiffs in no way indicate how Gao's exchange of shares for more liquid funds decreases the value or accessibility of his estate at the expense of his creditors. 12 Pa.C.S.A. § 5104, comment 8 (exchanging assets for *less* liquid assets are found voidable). In fact, Plaintiffs imply that Gao received far *too much* money for his VBit DC shares, which, if true, would **increase** Gao's property available to his creditors. (Plaintiffs' proposed second amended complaint ¶ 298). Therefore, the stock redemption simply does not fall under the purview of the Act and the claim fails on its face.

Finally, Plaintiffs' reliance on *Scholes* and *Donnell* is misplaced. In each of those cases, the profits paid to the "winner" investors were actual transactions initiated by the Ponzi scheme to the investor, not withdrawals from a personal virtual wallet that was funded by mining activity and sales commissions. *Donell v. Kowell*, 533 F.3d 762, 766 (9th Cir. 2008) ("[Kowell] received

regular interest payments from Wallenbrock…"); *Scholes v. Lehmann*, 56 F.3d 750, 758–59 (7th Cir. 1995).

As explained earlier, the important difference is that Gao retained control over his own Bitcoin throughout the entire process and initiated the withdrawals himself. In *Scholes* and *Donnell*, the payments made to investors were actual transfers of monies that were previously held and controlled by the Ponzi entities. In contrast, Gao's Bitcoin sat in a virtual wallet and were withdrawable at will, not under the control of Vbit, and therefore were not "profits" paid to investors, as described in *Scholes* and *Donell*.

Because Plaintiffs' amendment fails to address how the PUVTA applies to Gao's withdrawals and stock redemption, Plaintiffs proposed amendment is futile and should be denied.

## C.     PLAINTIFFS FAILED TO REQUEST AN EXTENSION TO THE DISCOVERY DEADLINE IN VIOLATION OF THE DISTRICT OF DELAWARE'S LOCAL RULE 16.4.

This court's Local Civil Rule 16.4, titled "Requests for Extensions of Deadlines" requires a discovery extension request to be made before the expiration of the date deadline. D. Del. LCvR 16.4. As previously mentioned, Plaintiffs' additional PUVTA claim would require extensive discovery which would take place beyond the discovery deadline and Plaintiffs were aware of Gao's withdrawals and stock redemption prior to the deadline. (Motion, p. 3). Rather than request an extension, as required, Plaintiffs allowed the deadline to pass, denying Gao and this Court of any notice that additional discovery would be sought in this case. Plaintiffs' failure to observe this Court's explicit extension rules warrants a denial of their motion to amend.

## CONCLUSION

WHEREFORE, for each of the foregoing reasons, Defendant Gao respectfully requests that the Court deny Plaintiffs' Motion according to Federal Rules of Civil Procedure 16(b), 15(a),

and Local Civil Rule 16.4.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Emily A. Letcher*
Samuel T. Hirzel, II (# 4415)
Emily A. Letcher (# 6560)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law
eletcher@hegh.law
*Attorneys for Defendant Jin Gao*

OF COUNSEL:

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY
Scott M. Ratchick
John C. Guin
191 Peachtree Street, NE, 46th Floor
Atlanta, Georgia 30303
(404) 659-1410
scott.ratchick@chamberlainlaw.com
john.guin@chamberlainlaw.com

Dated: October 6, 2025