# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROSS DETTMERING, FRANCIS MANGUBAT, and all other similarly situated individuals, | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 22-1482-JLH-SRF |
| VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VO, SEAN TU, JIN GAO, and JOHN DOE INDIVIDUALS 1-10, and ABC COMPANIES 1-10, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| MICHAEL EICHLER, and all other similarly situated individuals, | )<br>)<br>) | |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 22-1574-JLH-SRF |
| VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VO, SEAN TU, JIN GAO, and JOHN DOE INDIVIDUALS 1-10 and ABC COMPANIES 1-10, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE AN AMENDED AND CONSOLIDATED COMPLAINT**

Plaintiffs submit this reply in support of their motion for leave to amend. Plaintiffs acted diligently in seeking to conform the complaint to newly discovered evidence, and amendment is warranted under Rule 15's liberal standard because there is no undue delay, prejudice, or futility. Similarly, even if Rule 16's good cause standard applies, Plaintiffs diligently pursued their claims and sought amendment as soon as practicable.

**I.    RULE 15(A) GOVERNS PLAINTIFFS' MOTION BECAUSE THERE IS NO OPERATIVE AMENDMENT DEADLINE**

Plaintiffs addressed Rule 15(a) in their opening brief because neither the operative scheduling order (D.I. 235) nor the preceding order (D.I. 184) set a deadline for amending pleadings. In this posture, Rule 15(a) provides the appropriate framework. In any event, regardless of whether the Court applies Rule 15(a) or Rule 16(b)(4), amendment is warranted here: Plaintiffs acted diligently, no party will be prejudiced, and the interests of justice favor resolving the claims on their merits.

As background, the Court entered the initial scheduling order (D.I. 45) on February 21, 2023, while briefing on Defendants' motions to dismiss the original complaint was still ongoing. That order set a March 10, 2023 deadline to amend or join parties—less than three weeks later— and stayed discovery against Defendants Vo and Gao pending a ruling on the motions to dismiss. *See* D.I. 45 at 2. On September 25, 2023, the Court dismissed the original complaint without prejudice and gave Plaintiffs one month to amend. D.I. 128. Following further motion to dismiss briefing, the Parties stipulated to stay "all deadlines provided in the Court's February 23, 2023 Scheduling Order (D.I. 45)" pending resolution of those motions, which the Court approved. D.I. 167 at 3; D.I. 170. After the motions were resolved, the Court entered a new scheduling order on December 16, 2024, setting a fact discovery deadline of July 25, 2025. D.I. 184, 185. The Court

1

later extended that deadline to September 5, 2025, on Defendant Gao's unopposed motion filed on July 18, 2025. D.I. 234.

In similar circumstances, where procedural developments have rendered application of a since past deadline illogical or inappropriate, courts have exercised their discretion to apply the more lenient Rule 15 standard. *See, e.g., EBIN New York, Inc. v. Young Chul Lee,* CV 17-13509 (JMV), 2019 WL 5168624, at *2 (D.N.J. Oct. 11, 2019) ("Rule 15 is the correct standard to use for this motion. … [T]he anachronous amendment deadline is outdated and in reality, of no moment. It would be unjust to apply the deadline to this case. … The prior scheduling order(s) have been inoperative for some time."); *In re: L'Oreal Wrinkle Cream Mktg. Practices Litig.*, MDL 2415, 2015 WL 5770202, at *3 (D.N.J. Sept. 30, 2015) ("The bottom line is the deadline for amended pleadings contained in the original scheduling order is – and has been – inoperative for quite some time … . It would be illogical to hold Plaintiffs to an amendment deadline date in a scheduling order that long ago went stale."); *see also Harding v. Jacoby & Meyers, LLP*, CV 14-5419 (JMV), 2018 WL 3377159, at *3 (D.N.J. July 11, 2018) ("It would be inequitable and unjust to base an important decision on a dated, inoperative scheduling order, and the Court declines to do so.").

Should the Court nonetheless find that Rule 16(b)(4) applies, Plaintiffs respectfully request that the Court, in its discretion, consider the argument here. *See Abernathy v. Vill. of Park Forest*, No. 16-CV-2128, 2017 WL 11884840, at *1 (N.D. Ill. Oct. 30, 2017) ("Although arguments first raised in reply briefs can be waived, in the exercise of its discretion the Court will consider Plaintiff's alternative theory."); *Anderson v. Bank of Am.*, No. 10CV0818 DMS AJB, 2010 WL 3185777, at *2 (S.D. Cal. Aug. 10, 2010) ("Although the general rule is that arguments raised for

the first time in a reply brief are waived, a district court has the discretion to consider an argument first raised in a reply brief.") (quotations and citations omitted).

## II. PLAINTIFFS HAVE SHOWN GOOD CAUSE AND DUE DILIGENCE SUFFICIENT TO MERIT MODIFICATION

To the extent Rule 16(b)(4) applies, Plaintiffs have shown good cause and due diligence sufficient to merit the modification of the deadline for amending the complaint. "'Good cause' exists when the [s]chedule cannot reasonably be met despite the diligence of the party seeking the extension." *S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 521 (D. Del. 2010). This is a complex action arising out of heavily concealed fraudulent conduct, in which discovery has been rendered even more complicated by the primary corporate defendants going defunct and their former CEO, Don Vo, absconding to Vietnam to avoid the consequences of his actions. Despite their due diligence, including extensive correspondence and meet and confers, it was only with the benefit of written discovery, obtained as recently as July 2025, that Plaintiffs learned critical facts about alleged fraudulent transfers to Defendants Vo and Gao. And it is only with their depositions, taken on August 7 and August 12, 2025, that Plaintiffs have been able to detail those transfers with sufficient particularity to ground a claim that must meet Rule 9's heightened pleading standard.

Plaintiffs diligently pursued their claims against Ms. Vo and Mr. Gao. Ms. Vo argues that Plaintiffs have known about the payments that support the proposed new claims against her since March of 2023, because she claims that she produced her divorce agreement with Don Vo on that date. D.I. 265 at 2, 9. Ms. Vo cites a March 20, 2023 Notice of Service to support this argument, but the fact is Ms. Vo did not produce the divorce agreement until nearly two years later, on February 3, 2025. Ex. A. Ms. Vo only produced additional documents concerning these transfers in June and July of 2025. Ms. Vo also refused to provide any additional information concerning these transfers in largely refusing to respond to an interrogatory requesting that she identify all

3

transfers from Don Vo to her from December 2021 to the present. Ex. B at 13-14. Similarly, Mr. Gao produced documents showing the extent to which he benefited from the alleged Ponzi scheme on July 7, 2025. Ex. C. And, Plaintiffs, were not able to confirm that Mr. Gao actually made those withdrawals until they deposed him on August 12, 2025. Mr. Gao also only produced certain additional documents concerning his VBit expenditures and earnings after the close of discovery on September 16, 2025. Ex. D. Accordingly, it is simply not true that Plaintiffs have sat on this information.[1]

Instead of requesting serial amendments every time a new document was received from Defendants potentially concerning a fraudulent transfer, Plaintiffs diligently deposed Defendants Vo and Gao about the transfers at issue in order to be in a position to plead their fraud claims with particularity and "inject some precision or some measure of substantiation into the fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). The due diligence demonstrated through their course of discovery is sufficient to meet the good cause standard set forth by Rule 16(b)(4) to amend the scheduling order to permit this motion to amend the pleadings.[2]

### III.    PLAINTIFFS SATISFY RULE 15(A)

---

[1] Plaintiffs requested a meet and confer to discuss the proposed amendment on September 11, 2025, less than a week after the close of discovery. *See* Exhibit E. Defendants' counsel, however, were unable to meet until almost two weeks later, on September 22.

[2] Even while Plaintiffs have been briefing the instant motion, they have continued to learn about new facts and potential sources of funds misappropriated by or in connection with VBit. As such, Plaintiffs cannot rule out the possibility that they will seek further amendment in the future if additional transfers come to light.

### A. Plaintiffs Have not Delayed in Seeking Amendment

As explained in Plaintiffs' opening brief and above, Plaintiffs filed this motion to conform the complaint to the evidence obtained through discovery, doing so promptly at the close of discovery. Plaintiffs did not possess the information necessary to allege the facts supporting the proposed amended claims until near the end of discovery, and they moved to amend shortly thereafter, thus there is no undue delay. *See Story v. Midland Funding LLC*, No. 3:15-cv-0194-AC, 2016 WL 5868077, at *3–4 (D. Or. Oct. 7, 2016) (holding that a short delay of a few weeks between learning new facts in discovery and seeking leave to amend was not undue). As courts have recognized, a plaintiff "should not be penalized because it prudently waited to obtain key deposition testimony before filing its proposed amendment." *Evonik Degussa GMBH v. Materia Inc.*, No. 09-636 (NLH/JS), 2011 WL 13152274, at *4 (D. Del. Dec. 13, 2011) (finding good cause to permit amendment where the motion was filed within two months of relevant depositions); *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003) (holding that a six-week delay after a key deposition was not undue).[3]

### B. No Additional Discovery is Necessary to Address Plaintiffs' Claims, and There is No Prejudice to Defendants

Mr. Gao contends that he will be unduly prejudiced by the proposed amendment because it would require discovery into his intent when withdrawing Bitcoin and "whether [the withdrawals] were undertaken for less than fair value while Gao was insolvent." D.I. 266 at 7. This argument rests on a fundamental misreading of the proposed new claim. The amendment asserts *constructive fraud* under the Pennsylvania Uniform Voidable Transactions Act ("PUVTA"), 12 Pa. C.S. § 5104(a)(2), which concerns whether Mr. Gao received transfers from VBit during a time

---

[3] The court in *Enzo Life Scis.* also held that because the claim at issue required pleading with particularity, the moving party "was prudent and possibly required to confirm the factual allegations through discovery." *Id.* at 489.

when *VBit*—not Mr. Gao—was insolvent. *See* D.I. 259-1 at ¶¶ 292-303. The claim does not allege *actual fraud* under § 5104(b), and the factors relevant to that distinct theory are therefore irrelevant. Nor does the claim depend on Mr. Gao's "fraudulent intent" (D.I. 266 at 7); it turns instead on his receipt of profits from a Ponzi scheme, which is, by definition, insolvent. *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) ("A Ponzi scheme . . . is, as a matter of law, insolvent from its inception.").

Accordingly, no additional discovery is necessary concerning Plaintiffs or other class members, nor is any discovery required regarding Mr. Gao's intent. *See* D.I. 266 at 8–9. While it is true that others may have profited from VBit's Ponzi scheme and could be liable under a similar theory, Plaintiffs did not. *See, e.g.,* Ex. F, Mangubat dep. at 105:14-18. When seeking class certification, Plaintiffs intend to define the class to exclude the small number of individuals—such as Mr. Gao—who profited from VBit's fraud.

Ms. Vo similarly argues that she would be prejudiced by the amendment because she would need to obtain discovery from third-party financial institutions to address the "actual intent" factors under § 5104(a)(1). D.I. 265 at 7. But this argument again misstates the nature of the proposed claims. The type of information held by financial institutions is relevant, at most, to a single factor under § 5104(b)—whether the transfer "was substantially all of the debtor's assets." Plaintiffs have already served subpoenas and obtained documents from numerous financial institutions concerning Mr. Vo's assets. D.I. 80 (United Savings Bank and Republic Bank), D.I. 83 (Power Block Coin), D.I. 84, 216 (Coinbase), D.I. 168 (Payward), D.I. 239 (Truist Bank). As a result, Ms. Vo already possesses documents showing Mr. Vo's financial condition at the time of the transfers. Given that Ms. Vo has not referred to any concrete sources of additional information, her argument about the need for further discovery is purely hypothetical.

### C. The Proposed Amendment is not Futile

#### 1. Plaintiffs Stated the Proposed New Claims with Sufficient Particularity

Both Mr. Gao and Ms. Vo argue that Plaintiffs have not pleaded the proposed amended claims with sufficient particularity. That contention lacks merit. Mr. Gao asserts that the claim against him is deficient because it does not address the factors relevant to actual fraud under § 5104(a)(1), which requires proof of "actual intent." But as discussed above, that argument reflects a misunderstanding. The proposed claim against Mr. Gao concerns whether the transferee gave reasonably equivalent value and whether the transferor was insolvent. The § 5104(b) factors, which apply only to actual intent claims, are therefore irrelevant.

Ms. Vo similarly contends that Plaintiffs failed to allege the factors necessary for a claim under § 5104(a)(1), which involves an "actual intent to hinder, delay, or defraud any creditor." But the statute makes clear that a plaintiff need not plead how every factor supports such intent. *See* 12 Pa. Cons. Stat. § 5104(b) ("In determining actual intent under subsection (a)(1), consideration *may be given*, among other factors, to [the factors listed].") (emphasis added). The complaint plainly details how Mr. Vo created VBit, misappropriated customer funds, transferred portions of those funds to his wife and eventually ex-wife (an insider), and then fled the country to evade this and other courts' jurisdiction. These allegations easily satisfy the pleading standards applicable to claims under § 5104(a)(1). *See In re Live Well Fin., Inc.*, 652 B.R. 699, 705 (Bankr. D. Del. 2023) (holding that a complaint need not allege "the badges of fraud . . . for the court to infer fraudulent intent. . . . And a court may consider other factors when analyzing a debtor's intent.").

#### 2. Mr. Gao's Withdrawals of Bitcoin from his VBit Wallet Constitute Transfers

Mr. Gao contends that Plaintiffs' proposed amendment would be futile because his withdrawals of approximately 35 Bitcoin between November 2021 and May 2022 do not constitute

"transfers" under the PUVTA. This argument fundamentally misunderstands the nature of Plaintiffs' claim and misapplies the cases he cites.

The proposed fraudulent transfer claim alleges that, by successfully withdrawing his Bitcoin, Mr. Gao "reduced the amount of Bitcoin that remained available for Plaintiffs and other members of the Class to withdraw before those accounts were frozen in May and June of 2022." D.I. 259-1 at ¶ 297. Thus, it is irrelevant that Mr. Gao "did not deplete his estate in any potentially contrived notion of attempts to deprive potential creditors." D.I. 256 at 15. The cases cited by Mr. Gao are inapposite. They merely hold that a deposit by a transferor into *his own* bank account is not a "transfer" under the Bankruptcy Code. *See, e.g., In re Whitley*, 848 F.3d 205, 208–09 (4th Cir. 2017) ("The Bank's mere maintenance of Whitley's checking account does not suffice to make deposits and wire transfers in that account 'transfers' from Whitley to the Bank."). As the Ninth Circuit explained in *In re Tenderloin Health*, 849 F.3d 1231, 1244 (9th Cir. 2017), "[t]he pertinent question is whether the deposit depletes the assets of the estate available for distribution to creditors." Here, the transfer of Bitcoin from VBit to Mr. Gao's personal wallet indisputably depleted VBit's assets—reducing the Bitcoin available to Plaintiffs and the proposed class—and therefore constitutes a "transfer."

Mr. Gao also argues that Plaintiffs fail to allege the "specific elements or factors listed in the PUVTA." D.I. 266 at 15. Once again, this misstates the claim. Plaintiffs assert *constructive fraud* under 12 Pa. C.S. § 5104(a)(2), alleging that Mr. Gao profited from his VBit transactions and received transfers during a time when VBit was insolvent. The § 5104(b) factors are therefore irrelevant.

Mr. Gao's arguments concerning his VBit DC shares (D.I. 266 at 16) are likewise misplaced. The claim alleges that the inflated payment for those shares reduced VBit's value and,

8

in turn, the funds available to Plaintiffs and the proposed class. This theory has nothing to do with whether Mr. Gao's property is "available to his creditors."

Finally, Mr. Gao's attempt to distinguish this case from fraudulent transfer claims arising out of other Ponzi schemes on the ground that he "always had control" over his Bitcoin is directly contradicted by the facts. *See* Ex. G, Mucellin dep. at 52:12-54:2. Mr. Gao only obtained true "control" over Bitcoin once he withdrew it from VBit—precisely the kind of transfer that reduced the assets available to creditors and class members.

### 1. *Scholes v. Lehmann* is Directly on Point

Ms. Vo contends that *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) is irrelevant to Plaintiffs' claims because of procedural and factual distinctions. D.I. 265 at 9. But those distinctions are immaterial—and, if anything, underscore that the facts here present an even stronger case than *Scholes*. Ms. Vo argues that *Scholes* is distinguishable because the transfers there were made by entities controlled by the husband, whereas here, the transfers were made directly by Mr. Vo to Ms. Vo. That difference only strengthens Plaintiffs' position: Mr. Vo's direct transfers to his wife and then ex-wife were plainly designed to shield assets from creditors.

Nor is there any merit to Ms. Vo's suggestion that divorce settlements are entitled to "especially deferential" treatment. *Scholes* itself makes clear that such transactions are voidable when they serve to protect fraudulently obtained funds.

Finally, Ms. Vo argues that Plaintiffs cannot show the divorce settlement was a sham. That contention ignores both the record and the allegations in the proposed amended complaint, which alleges that Mr. Vo transferred $3 million to Ms. Vo precisely to protect those funds from creditors, including Plaintiffs and the proposed class. Despite Mr. Vo's purported $105 million sale of VBit, Ms. Vo agreed to accept only $3 million in the divorce. Ex. H, Vo dep. at 149:21-150:22. Even more telling, Ms. Vo waived her right to any financial disclosure and claims she relied solely on

9

Mr. Vo's word that the settlement amount was fair. *Id.* at 147:8-149:20. Those facts strongly support Plaintiffs' allegation that the divorce agreement was a sham transaction designed to conceal assets from creditors.

## IV.     CONCLUSION

For the reasons set forth above, Defendants' objections lack merit. Plaintiffs acted diligently, and there is no undue delay, prejudice, or futility. Rule 16 does not apply—and even if it did, Plaintiffs have demonstrated good cause supporting their request. Justice therefore requires granting Plaintiffs leave to file the proposed amended complaint.

Dated: October 13, 2025

By: */s/ Scott M. Tucker*
Robert J. Kriner, Jr. (Del. Bar No. 2546)
Scott M. Tucker (Del. Bar No. 4925)
CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP
2711 Centerville Road Suite 201
Wilmington, DE 19808
(302) 656-2500
rjk@chimicles.com
smt@chimicles.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

BONI, ZACK & SNYDER LLC
Michael J. Boni (admitted *pro hac vice*)
Joshua D. Snyder (admitted *pro hac vice*)
Benjamin J. Eichel (admitted *pro hac vice*)
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Tel: 610-822-0200
Fax: 610-822-0206
mboni@bonizack.com
jsnyder@bonizack.com
beichel@bonizack.com

LANGER, GROGAN & DIVER PC
Peter Leckman (admitted *pro hac vice*)
Mary Catherine Roper (admitted *pro hac vice*)
David Nagdeman (admitted *pro hac vice*)
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Tel: 215-320-5660
Fax: 215-320-5703
pleckman@langergrogan.com
mroper@langergrogan.com
dnagdeman@langergrogan.com

*Interim Co-Lead Counsel for Plaintiffs
and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Scott M. Tucker, certify that on October 13th, 2025, and pursuant to Local Rule 5.4(a), I caused a copy of the foregoing Motion for Leave to File an Amended and Consolidated Complaint to be served on all *pro se* parties and counsel of record via ECF:

>Sean Tu
>*Pro se*
>
>Travis Steven Hunter
>Richard, Layton & Finger
>920 North King Street
>Wilmington, DE 19801
>hunter@rlf.com
>schoenbaum@rlf.com
>
>Mitchell S. Kim
>Buchalter
>dmayer@buchalter.com
>mkim@buchalter.com
>
>*Attorneys for Defendant Phuong D Vo*
>
>Samuel T. Hirzel, II
>Emily A. Letcher
>Heyman Enerio Gattuso & Hirzel LLP
>300 Delaware Ave, Suite 200
>Wilmington, DE 19801
>shirzel@hegh.law
>krowe@hegh.law
>
>Scott M. Ratchick
>John C. Guin
>191 Peachtree Street, NE, 46th Floor
>Atlanta, GA 30303
>Scott.ratchick@chamberlainlaw.com
>John.guin@chamberlainlaw.com

Joanna J. Cline
Cassandra Thompson
1313 N. Market Street
Suite 1000
P.O. Box 1709
Wilmington, DE 19801
Joanna.Cline@troutman.com
Cassandra.thompson@troutman.com

*Attorneys for Defendant Jin Gao*

13