# Exhibit G

```
 1                UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF DELAWARE
 3
 4   ROSS DETTMERING, et al.,     : NO. 22-1482
 5   Plaintiffs                   :
 6                                : NO. 22-1574
 7            vs.                 :
 8                                :
 9   VBIT TECHNOLOGIES CORP.,     :
10   et al.,                      :
11   Defendants                   :
12
13                         - - -
14
15                Thursday, May 29, 2025
16
17                         - - -
18
19
20           Deposition of THEODORE MUCELLIN taken in
21   the Law Offices of Langer, Grogan & Diver, P.C.
22   1717 Arch Street, Suite 4020, Philadelphia,
23   Pennsylvania, on the above date, commencing at
24   1:36 p.m. before Lauren A. Buchak, Registered
25   Merit Reporter and Certified Realtime Reporter.
```

Case 1:22-cv-01482-JLH-SRF   Document 270-7   Filed 10/13/25   Page 3 of 3 PageID #: 3439

Deposition of Theodore Mucellin                                    Ross Dettmering, et al. v. VBit Technologies Corp., et al.

Page 52

back-of-the-napkin math, so, you know, I wouldn't take that with a huge grain of salt, but then I'm like, well, maybe I don't understand hash power right. Let me go look it back up and re-do the math.

It just -- in the moment, all these little things just seemed like the normal nonsense of a day and then looking back, it's like, well, you know, you string them all together, and it -- I feel very strongly that it was all a scam, at least from when I was there.

I do think, like, when The Inquirer wrote the article on them and they were growing their downline, like, you know, Bitcoin price was going up, there was probably a real business when -- if and when they got over their skis and when they didn't have the Bitcoin they said they did.

And the other thing that really kind of stuck in my head was, like, this is my second or third day. I said, well, why did we start having problems? Is it all just this security, you know, kind of piece? And Ken said, well, I think it's also really that the price went down.

Page 53

And I said, well, I don't care what we're pricing Bitcoin at in USD. We either have that many Bitcoin or we don't, right? What does it matter? Did he just tell me they're buying it live to pay these people back? And then he quick switched the subject. And he said, well, no. It's just about sometimes they put it in different places, and they have to get it out of storage.

Getting that has nothing to do with price and so, like, at that point, this was early in my first week. I'm like, well, maybe they're buying some instead of pulling it out of cold storage or maybe there's -- they're buying some of it, but it's not, like -- you know, it's -- you know, it's nonsense.

And then there's even stuff with Lillian, like -- the thing that finally caused me to quit when I was already speaking to counsel was I sent the very clear email saying something to the effect that we need this many Bitcoin after talking with Sean. We need this many Bitcoin to fill the current requests. I was told, like, we can't do it. Again, weird timing and then, like, middle of the day, it's -- a

Page 54

different amount was released than they said, a higher amount.

And I called an attorney, and I said, you know, I think I'm being lied to, you know. Can you reach out to the U.S. Attorney's Office for me -- or the SEC, excuse me, for me, the prosecutor there. And he used the word "lulling," and it just, like, clicked in my brain that this dripping out of amount was a lulling scheme. I don't think I had ever heard that word necessarily used like that before.

Q.   I'm not familiar with it. What's your understanding?

A.   In the prosecutorial world and criminal justice world, a lulling scheme is a scheme where you drip out just enough to keep them interested. So you don't give the full amount they're owed, but you don't give nothing because then it reveals a scam. Just a little bit out. You lull them along.

And when that word was used in context of me just having explained this sort of weird amount released, it just -- like, the hair on the back of my neck, and I said, okay. Call the SEC now. And then I -- he coached me on

Page 55

writing the resignation letter and all that.

Q.   So you've explained your understanding of connecting Lillian and Ken. Is there anyone else among the individuals we've talked about that could fit that similar pattern of the Lillian communications being questioned?

A.   I certainly had conversations with others that when Lillian had these sort of conveniently worded, addressing-my-concern emails could have been educated by what I said to those, but nothing I can direct so -- connect directly. I'm happy if there's particular ones -- emails you want me to look at and respond to, but no.

It just felt like -- and then Ken had this whole thing where he pretended to hate Lillian but then he respected her. I shouldn't work -- we should do our own thing, and he cares about the customers, but, you know, she's the boss, and we really have to respect it. It didn't -- I thought it was a cultural thing at first and then it was like, it's just a you're-lying-to-me thing.

Q.   Let's look at some documents.

MR. EICHEL:  For those on Zoom, this is Mucellin 38. Hopefully everyone