# Exhibit H

Case 1:22-cv-01482-JLH-SRF   Document 270-8   Filed 10/13/25   Page 2 of 3 PageID #: 3441

Deposition of Phuong D. Vo                                                     Ross Dettmering, et al. v. VBit Technologies Corp., et al.

```
                    IN THE U.S. DISTRICT COURT
                     FOR THE STATE OF DELAWARE
    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                    )
    ROSS DETTMERING, et al.,        )
                   Plaintiffs,      )   NO. 22-1482-CFC-SRF
                                    )
    -vs-                            )
                                    )
    VBIT TECHNOLOGIES CORP.,        )
    et al.,                         )
                   Defendants.      )
    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ )

                          - - - -
```

Oral deposition of PHUONG D. VO, was taken pursuant to Notice, held at the offices of BONI, ZACK,& SNYDER, LLC., 15 St. Asaphs Road, Bala Cynwyd, Pennsylvania, 19004, on Thursday, August 7, 2025, commencing at approximately 9:30 a.m., before Ronald DeShields, Court Reporter and Notary Public.

Everest Job No.: 43490

Page 148

 1  BY MR. EICHEL:
 2     Q.  More information?
 3     A.  (No audible response.)
 4     Q.  Or do you think this means you can't ask him
 5  for more money?
 6     A.  Can't ask him for more money.
 7         MR. EICHEL:  Okay.  Well, let's focus on
 8     the first sentence.  It says:  The parties have
 9     each been independently advised of and are fully
10     cognizant of their respective rights to a full
11     formal disclosure of the extent of the assets,
12     income expectencies and liabilities of the other
13     prior to the execution of this agreement.
14  BY MR. EICHEL:
15     Q.  My understanding of that language, and you
16  tell me if I'm wrong, is that that means that as a
17  party getting divorced, you have the right to ask the
18  other party for a full disclosure of their financial
19  circumstances.
20         Do you have that understanding, or did
21  you not know that you had those rights?
22     A.  Yeah.
23     Q.  You knew you had those rights.
24     A.  I knew this.
25     Q.  Okay.  Did you ever ask Danh for any

Page 149

 1  disclosure of his financial assets during your divorce?
 2     A.  No.
 3     Q.  Why not?
 4     A.  Because he very straightforward when he left,
 5  he say, um, he basically give me very much half of his
 6  money.
 7     Q.  He said he was giving you half of his money.
 8  But you have no way of knowing if it was half.
 9         Right?
10     A.  I don't.  (Unintelligible) at that time I
11  don't think he could have more than that, because he
12  trade -- personal trading cannot make more than what he
13  say.
14     Q.  But --
15     A.  For what I understand.
16     Q.  Did you ever see any trading statements?
17     A.  No.
18     Q.  So, you have no way of knowing if how much he
19  told you he made is accurate?
20     A.  No.
21     Q.  And we looked at the press release a little
22  while ago of the Advanced Mining deal, right, and that
23  was a deal for a hundred and five million.
24         Right?
25     A.  Yes.

Page 150

 1     Q.  And do you understand all that money was
 2  going to Danh?
 3         MR. KIM:  Objection as to form.
 4         THE WITNESS:  Honestly, I didn't think
 5     about it until now, you brought it up.
 6  BY MR. EICHEL:
 7     Q.  You didn't think you're entitled to some of
 8  the hundred and five million?
 9     A.  Like I know the money but, um, because he
10  mention he don't want to discuss, so I never ask for
11  more.  And I thought, like he say, we agree with that.
12  Like I say, I feel very generous what he give me.
13     Q.  I mean, I personally -- I have no idea if
14  Danh got a hundred and five million dollars or not, but
15  if he did, aren't you entitled, wouldn't you think
16  you're entitled to some of that?
17         MR. KIM:  Objection as to form.
18         THE WITNESS:  (No audible response.)
19  BY MR EICHEL:
20     Q.  You're shaking your head no.
21         Is that right?
22     A.  No.  Can you ask again.
23     Q.  Sure.  Did you ever -- did you ever become
24  familiar with the term marital property in your
25  divorce?

Page 151

 1     A.  We legal married, yes.
 2     Q.  Right.  And, so, if a couple is married, and
 3  one party starts a business during that marriage, that
 4  business becomes marital property.  Which means when
 5  you got divorced, you have a right to some of the money
 6  that Danh got from selling VBit.
 7     A.  Yes.
 8     Q.  Don't you think you're entitled -- you would
 9  be entitled to that money?
10         MR. TUCKER:  Objection as to form, to
11     the extent it calls for a legal conclusion.
12         MR. KIM:  Join.
13  BY MR. EICHEL:
14     Q.  Do you think you should be entitled to some
15  of that money?
16     A.  I never ask, because...
17     Q.  I'm sorry, what was your answer?
18     A.  (unintelligible) ask for that.
19     Q.  You didn't ask for what?
20     A.  I didn't ask him for extra anything.
21     Q.  You just, the three million was fine?
22     A.  Yes.
23     Q.  Okay.  You gave 50,000 as a loan to VBit to
24  start the company.
25         Right?