**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROSS DETTMERING, FRANCIS MANGUBAT, and all other similarly situated individuals,<br><br>        Plaintiffs,<br><br>vs.<br><br>VBIT TECHNOLOGIES CORP, VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VO, SEAN TU, JIN GAO, and JOHN DOE INDIVIDUALS 1-10, and ABC COMPANIES 1-10,<br><br>        Defendants, | Case No.: 22-cv-01482-JLH-SRF |
| MICHAEL EICHLER, and all other similarly situated individuals,<br><br>        Plaintiffs,<br><br>vs.<br><br>VBIT TECHNOLOGIES CORP, VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VO, SEAN TU, JIN GAO, and JOHN DOE INDIVIDUALS 1-10, and ABC COMPANIES 1-10,<br><br>        Defendants, | Case No.: 22-1574-CFC-SR |

# EXHIBIT L

1

## Exhibit L: Deposition Excerpts of Ross Dettmering (August 20, 2025)

This exhibit contains selected excerpts from the sworn deposition of Plaintiff **Ross Dettmering** ("Mr. Dettmering", "Dettmering", "The Witness"). These excerpts support Defendant Sean Tu's Motion for Summary Judgment because they show that Plaintiff has no personal knowledge of any actions, statements, or representations made by Mr. Tu, cannot identify facts supporting allegations against him, and does not care whether any defendant actually caused him harm.

### I. How Plaintiff First Learned of VBit

**Pages 20:22-25, 25:1-8**  (Examination by Mr. Kim)

Q. Thank you. Okay, so in terms of VBit, I do want
to ask a few questions about that company.
So when did you first become aware of a company
called VBit Technologies Corporation?

A. Sometime in March 2021.

Q. And how did you get to know VBit Technologies
Corporation?

A. I was initially introduced by an associate of
mine.

Q. What was the associate's name?

A. Nigel Richards.

Q. And do you know how he knew about VBit
Technologies?

A. I believe he was introduced by another member who
was involved with the company or a seller -- not a
seller -- an affiliate.

**II. Plaintiff's Reliance Was on His Friend, Not Any Defendant**

**Page 44:16-18**  (Examination by Mr. Kim)

Q. Did you consult with anyone before purchasing the

packages from VBit?

A. Yes, Mr. Richards, who I told you introduced me to it.

**Pages 184:6-25, 185:1-4**  (Examination by Mr. Ratchick)

Q. Okay. Yet your friend, Mr. Richards, was

participating in a multi-level marketing operation.

Did -- were you skeptical about his motives in

recommending this to you?

A. No.

MR. EICHEL:· Objection to form.

Q. Why not?

A. I've known him for a long time and if he sees

investment opportunities he passes along to me, I think

it's in his best interests.· He's looking out for me.

He's not looking to sell me on something.

Q. Yet -- yet he chose to participate in a

multi-level marketing operation.

Didn't that raise concerns for you?

A. No. That's his choice.

Q. Well, we'll get to the fact that it became your

choice too, in a minute, but I just want to make sure.

So the fact that he was introducing you to a

multi-level marketing operation, in and of itself, did not

create skepticism here?

3

A. No.

Q. I'm sorry, "No," as in correct?

A. Correct.


**Page 247:15-21**  (Examination by Mr. Tu)

Q. All right. You mentioned you -- you mentioned

that Mr. Richards, Nigel Richards, that referred to you.

So did you know, at the time that you made the

purchase, that he would have made a commission on your

purchase?

MR. EICHEL: Objection to form.

THE WITNESS: Yes.


**III. No Communication or Interaction With Sean Tu**

**Pages 130:14-25, 131:1-5**  (Examination by Mr. Kim)

Q. And in regards to Sean Tu, other than what you

looked up on the internet, what do you know about him?

A. I know he's associated with the company.

I don't recall what his exact role was.

Q. Okay. Have you ever talked to him in person?

A. I don't believe so.

Q. Have you ever exchanged any calls with him?

A. I don't think so.

Q. Have you ever exchanged any text messages with

Sean Tu directly?

A. I don't think so.

Q. Have you ever exchanged any Telegram messages

with Sean Tu directly?

A. I don't think so.

Q. Have you ever met with him remotely through Zoom

or WebEx or those similar platforms?

A. I don't think so.

## IV. Plaintiff Does Not Know Who Was Responsible for Problems

**Pages 156:23-25, 157:1-2**  (Examination by Mr. Ratchick)

Q. Okay. Do you know who was responsible for you

not being able to withdraw Bitcoin from your wallet?

A. No, I do not know what people specifically did

within the company, in terms of how that was, you know --

who was responsible for making those transactions.

## V. At Time of Purchase, Plaintiff Did Not Know Who Tu Was

**Page 245:1-14**  (Examination by Mr. Tu)

Q. Okay. Earlier you testified at the time of the

purchase you didn't know who the officers of VBit were,

other than Danh Vo. Then you later mentioned

me as an employee. So I just want to get clarification.

So at the time of your initial purchase, the

first time that you bought something or heard about VBit,

did you know who I was at the time or what my role was?

MR. EICHEL: Objection to form; compound.

BY MR. TU:

Q. Or did you know who I was?

I'll just stick with that.

A. I don't know if I -- at that specific time, I

5

don't recall. If I learned about you later on, I'm -- I'm

not sure.

## VI. Plaintiff Admits Tu Was Not Founder/Owner and Has No Proof Tu Caused Him Harm

**Page 246:9-21**  (Examination by Mr. Tu)

Q. Just to follow-up with that; so today, with what

you know today, do you believe that I have held those

roles, in the role of a founder, owner, or major

shareholder of VBit?

A. I don't know about major shareholder. I don't

believe you're the founder, I don't believe. As far as my

understanding, that would be Danh Vo is the founder.

Q. Uh, today, do you have any proof or facts that I

directly, as an individual, caused you harm or loss?

MR. SNYDER: Objection. And again, instruction

is based on your personal knowledge, independent of any

communications with counsel.

THE WITNESS: I -- no, I do not know.

## VII. No One at VBit Gave Him Personal Investment Advice

**Pages 247:23-25, 248:1-2**  (Examination by Mr. Tu)

Q. Did anyone at VBit not -- to your best knowledge,

not affiliates, VBit employees -- give you any personal

fi -- personal financial or investment advice?

MR. EICHEL: Objection, form.

THE WITNESS: No.

## VIII. Plaintiff Did Not Receive Any Materials From Tu

6

**Pages 248:22-25, 249:1-7**  (Examination by Mr. Tu)

Q. You mentioned that you reviewed VBit's website

and other materials before purchasing.

Were any of those materials, including emails,

documents, communications, sent or provided personally by,

like, me or any other of the named individuals, directly

to you?

MR. EICHEL: Objection to the form.

THE WITNESS: I don't believe I received anything

from you -- or didn't receive anything from you or Katie,

but Jin Gao may have given us documentation at the office.

I can't say for certain.

## IX. Plaintiff Admits the Complaint Groups All Defendants Together

**Pages 250:20-25, 251:1-25, 252:1-25, 254:1-3**  (Examination by Mr. Tu)

Q. Okay. Are you aware that that FAC, that first

amended complaint, alleged that this group of individuals

participated in sales, marketing or made certain

represent -- certain related represent -- representations

as well?

MR. EICHEL: Objection to the form.

THE WITNESS: If it said that, then yes.

I don't recall that specific wording.

BY MR. TU:

Q. Yeah, there's a -- a number of paragraphs that

say the defendants did -- did this, and it's typically

grouped under marketing, sales and, you know, there's a

big section of that in the FAC.

7

Just wondering if you're aware of it.

MR. EICHEL: Again, I don't --

MR. SNYDER: Objection; form. Mr. Tu, if you're

going to keep asking about the complaint, I'd ask that you

put it in front of him.

THE WITNESS: Yeah, I can't recite word for word,

the -- the complaint.

MR. RATCHICK: Mitch, do you want -- sorry --

Sean, do you want Mitch to put the complaint up?

MR. TU: That would help, if you could, please.

MR. KIM: Sure, sure.

MR. TU: You can do me a favor. It just earlier

the defendant -- it -- it defines what defendants are, and

it kind of grouped all of us together. Yeah.

MR. SNYDER: Is there a particular page?

MR. TU: Yeah, it's on the first paragraph.

THE WITNESS: Yes, I see it.

BY MR. TU:

Q. The definition of defendants previously is

basically all those named defendants; so VBit Tech, VBit

Mining, Advanced Mining, Danh Vo, Phuong Vo, Sean Tu, and

Jin Gao, and then they're lumped together as defendants,

by definition.

And then there is -- there's more allegations,

more complaints in this allegation that -- that alleged

that the entire group of doing something; specifically,

marketing, sales, et cetera.

So I'm just wondering if you were aware that

8

defendants are defined with all of us and that there's a

claim made against all of us as a group?

MR. EICHEL: Objection; form, compound.

BY MR. TU:

Q. Like number 9, you can see number 9, the

defendants further promise that the plaintiffs could earn

commissions and increase compute power and so forth.

There -- there's a bunch of these, correct?

MR. EICHEL: Objection.

BY MR. TU:

Q. You can see about -- is that what you see in

front of you?

MR. EICHEL: Objection.

THE WITNESS: I see line number 9 that says that,

yes.

BY MR. TU:

Q. What about line number 10, defendants' advertised

offering, however, were a complete sham, and so forth?

A. Yes, I see that.

Q. Okay. Do you have any facts or evidence that I,

as a defendant named in that group, personally made any

sales pitches, marketing statement, or represent -- or

representation to you before or after your purchase?

A. No.

Q. Did Katie Vo made any sales pitches, marketing

statements, represented -- representation to you before or

after your purchase?

A. No.

9

Q. Okay. So to be clear, even though the -- the

complaints includes allegations that includes all the

defendants in that group in these paragraphs, including

myself, that participated in sales and marketing, you have

no personal knowledge or evidence that I or any of the

other -- other individual -- I individually or other --

others have done any of that, correct?

MR. SNYDER: Objection to form, and the same

previous instruction, that the answer should be limited to

his own personal knowledge, independent of anything from

counsel.

THE WITNESS: I do not have any recollection of

you, Danh Vo, Katie Vo having any communication about

sales pitches, marketing, et cetera. Jin, I'm sure that

there was discussions with him about that.


**X. Plaintiff Explicitly Does Not Care Whether He Sued Innocent People**

**Pages 257:16-25, 258:1-7**  (Examination by Mr. Tu)

Q. Just follow-up. Do you have any concern about

the possibility that someone named in your lawsuit might

not actually contributed to your loss?

MR. EICHEL: Objection to form.

THE WITNESS: No.

BY MR. TU:

Q. Would it matter to you if someone named in your

lawsuit didn't actually cause you loss?

MR. EICHEL: Objection.

THE WITNESS: No.

10

BY MR. TU:

Q. So I'm -- this is going to be my last question.

Do you have any -- do you feel any concern or

would you regret if you found out that someone you sued

hadn't actually done anything to harm you?

MR. EICHEL: Objection.

THE WITNESS: No.

11