**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROSS DETTMERING, FRANCIS MANGUBAT, and all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VOE, SEAN TU, JIN GAO, JOHN DOE, INDIVIDUALS 1-10, and ABC COMPANIES 1-10,<br><br>Defendants. | C.A. No. 22-1482-JLH-SRF<br>(Consolidated) |
| MICHAEL EICHLER, and all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VOE, SEAN TU, JIN GAO, JOHN DOE, INDIVIDUALS 1-10, and ABC COMPANIES 1-10,<br><br>Defendants. | C.A. No. 22-1574-JLH-SRF<br>(Consolidated) |

**REPORT AND RECOMMENDATION**

Presently before the court in this putative class action for civil violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO") and various state law claims, are the following motions: (1) the Unopposed Motion to Seal certain exhibits to the Motion for Class Certification, filed by plaintiffs Ross Dettmering, Michael

Eichler, and Francis Mangubat (collectively, "Plaintiffs"), (D.I. 290);[1] (2) Defendant Gao's partial Motion to Strike Plaintiffs' concise statement of facts in support of their opposition to Defendant Gao's Motion for Summary Judgment, (D.I. 327);[2] (3) Defendant Jin Gao's ("Defendant Gao") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, (D.I. 296);[3] and (4) Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23, (D.I. 291).[4] Plaintiffs' Motion to Seal is GRANTED as unopposed.[5] For the following reasons, I recommend that the court DENY Defendant Gao's motion to strike,[6] GRANT Defendant Gao's motion for summary judgment, and DENY without prejudice Plaintiffs' motion for class certification. I further recommend that the court DISMISS without prejudice the claims against defendant Advanced Mining Group, John Doe Individuals 1-10, and ABC Companies 1-10.

[1] Civil Action Nos. 22-1482-JLH-SRF and 22-1574-JLH-SRF were consolidated for all purposes, up to and including trial, in an Order entered on November 6, 2023. (D.I. 136) All references to docket entries herein refer to the docket of lead Civil Action No. 22-1482-JLH-SRF.

[2] The briefing and filings associated with Plaintiffs' motion to strike are found at D.I. 327 and D.I. 328.

[3] The briefing and filings associated with Defendant Gao's motion for summary judgment are found at D.I. 296, D.I. 297, D.I. 319, D.I. 320, D.I. 321, D.I. 325, and D.I. 326.

[4] The briefing and filings associated with Plaintiffs' motion to certify the class are found at D.I. 291, D.I. 292, D.I. 293, D.I. 322, D.I. 323, and D.I. 324.

[5] Plaintiffs' Motion to Seal is nondispositive, and the court's ruling on the motion is therefore governed by 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2)

[6] As discussed at § II.A, *infra*, Defendant Gao does not identify the legal basis for his motion to strike. In an abundance of caution, the court addresses Defendant Gao's motion to strike as a dispositive motion under Rule 72(b).

# I. BACKGROUND

## A. Factual Background

Having reviewed the parties' respective statements of facts and responses thereto, the court finds that the following facts are undisputed.[7] This action arises from the marketing and sale of Bitcoin-mining packages ("mining packages") through VBit Technologies Corp. and related entities. (D.I. 131) VBit marketed contracts through which customers could acquire rights associated with Bitcoin-mining equipment and related hosting services. (D.I. 296-2 at ¶ 4; D.I. 321 at ¶ 4) Defendant Gao characterizes the contracts as providing land, equipment, and servicing that allowed customers to participate in "mining pools." (D.I. 296-2 at ¶¶ 4-6; D.I. 321 at ¶¶ 4-6) Plaintiffs dispute any suggestion that VBit customers relied on VBit to facilitate their participation in mining pools. They contend that the contracts were presented as leases, with options to purchase specific mining hardware and hosting services. (D.I. 321 at ¶¶ 4-6, Ex. C at 124:19-125:8; 133:12-134:6)

Plaintiffs entered contracts with VBit in 2021. (D.I. 296-2 at ¶¶ 7-8; D.I. 321 at ¶¶ 7-8) Ross Dettmering ("Dettmering") executed a VBit Mining Payment and Hosting Agreement on March 18, 2021, and a second agreement on March 26, 2021. (*Id.*) Francis Mangubat ("Mangubat") executed a VBit Mining Purchase and Hosting Agreement on December 3, 2021. (D.I. 296-2 at ¶ 19; D.I. 321 at ¶ 19) Michael Eichler ("Eichler") executed a Purchase and Hosting Agreement with VBit Technologies on October 18, 2021, and a second VBit Mining Purchase and Hosting Agreement with VBit Mining LLC on December 14, 2021. (D.I. 322 at ¶¶ 36-37; D.I. 321 at ¶¶ 36-37) Plaintiffs accuse Defendants of perpetrating a fraudulent scheme, essentially a Ponzi scheme, by offering these mining packages. Instead of fulfilling their

---

[7] Defendant Gao disputes almost the entirety of Plaintiffs' Statement of Facts (D.I. 326), largely on the basis that most of the facts contain no allegation pertaining to Defendant Gao and/or the allegations are inadmissible hearsay. (D.I. 320)

contractual promises, Defendants misappropriated customer funds for themselves and used new customer funds to pay earlier customers. (D.I. 178 at 2) Plaintiffs purport to bring this action individually and on behalf of a class of all people who purchased, acquired, or leased VBit's mining packages and withdrew less than the amount they paid. (D.I. 292 at 1)

The record reflects that Plaintiffs learned about VBit through sources other than Defendant Gao. Dettmering was introduced to VBit by an individual named Nigel Richards. (D.I. 296-2 at ¶ 9; D.I. 321 at ¶ 9) Mangubat learned about VBit through real-estate colleagues, including Lara Ertwine, Nigel Richards, and John Colabelli. (D.I. 296-2 at ¶ 21; D.I. 321 at ¶ 21) Eichler did not communicate with anyone at VBit before signing either of his contracts. (D.I. 296-2 at ¶ 39; D.I. 321 at ¶ 39)

The record reflects limited direct contact between Defendant Gao and Plaintiffs. Dettmering did not rely on any specific information from Defendant Gao about the operation or administration of the mining activity or the virtual wallets before signing his contracts. (D.I. 296-2 at ¶ 11; D.I. 321 at ¶ 11) Mangubat never spoke with Defendant Gao and did not rely on, care about, or pay attention to anything Defendant Gao presented regarding VBit. (D.I. 296-2 at ¶¶ 26-27; D.I. 321 at ¶¶ 26-27) Eichler never met Defendant Gao, had no independent knowledge of him, did not rely on any promises by Defendant Gao in deciding to enter the VBit contracts, and did not rely on anything Defendant Gao said or did concerning the later freezing of his VBit wallet. (D.I. 296-2 at ¶ 41; D.I. 321 at ¶ 41) Dettmering believed VBit was a legitimate company until VBit stopped allowing withdrawals from his wallet. (D.I. 296-2 at ¶ 12; D.I. 321 at ¶ 12) Mangubat testified that he did not have any problems with VBit until withdrawals and mining stopped. (D.I. 296-2 at ¶ 30; D.I. 321 at ¶ 30) Eichler similarly believed VBit was a legitimate business until he was unable to make withdrawals from his wallet. (D.I. 296-2 at ¶ 40; D.I. 321 at ¶ 40)

For a period of time, customers could receive and withdraw Bitcoin through the VBit system. Eichler generated approximately $4,000 in revenue from his two contracts, and he withdrew those earnings from his VBit Bitcoin wallet without speaking to anyone at VBit. (D.I. 296-2 at ¶ 38; D.I. 321 at ¶ 38) Mangubat earned Bitcoin through at least June of 2022 and, until then, he was able to make withdrawals from his VBit wallets and transfer Bitcoin to another cryptocurrency platform without speaking to anyone at VBit. (D.I. 296-2 at ¶¶ 31-33; D.I. 321 at ¶¶ 31-33)

Plaintiffs claim that the scheme began to unravel in the fall of 2021 and early 2022, when Don Vo fled to Vietnam and announced that Advanced Mining Group acquired VBit in a $105 million deal. (D.I. 320 at ¶¶ 16-18; Ex. I at 92:8-23, 137:3-12; Ex. D at 147:9-149:20) Plaintiffs maintain that there is no evidence Advanced Mining Group ever existed or that its purported chief executive officer, Lillian Zhou, was a real person. (D.I. 320 at ¶¶ 19-20; D.I. 292-10 at 48:21-50:15; D.I. 292-3 at 114:14- 115:4; D.I. 292-8 at 41:5-44:3; D.I. 292-11 at 131:10-23) Plaintiffs' concerns crystallized when they could no longer make withdrawals from their VBit wallets and VBit ceased mining activity on behalf of customers in late May of 2022. (D.I. 320 at ¶ 21; D.I. 18 at ¶¶ 159-62; D.I. 292-3 at 228:3-229:14) Dettmering testified that his "main reason" for filing suit was his inability to withdraw the mined Bitcoin in his VBit wallet. (D.I. 296-2 at ¶ 14; D.I. 321 at ¶ 14) Defendant Gao does not challenge the substance of these allegations, but instead argues that the averments do not pertain to his conduct and are otherwise based on inadmissible hearsay. (D.I. 326 at ¶ 21)

Plaintiffs have little personal knowledge regarding who was responsible for freezing the withdrawals. Dettmering admitted that he does not know who was responsible for his inability to withdraw Bitcoin, but he confirmed that he did not speak with Defendant Gao about the issue. (D.I. 296-2 at ¶ 15; D.I. 321 at ¶ 15) Eichler likewise testified that he did not rely on anything

Defendant Gao said or did regarding the freezing of his wallet. (D.I. 296-2 at ¶ 41; D.I. 321 at ¶ 41) Plaintiffs dispute any broader suggestion that no evidence exists regarding Defendant Gao's responsibility for the wallet freeze. (D.I. 321 at ¶¶ 15-16)

The parties dispute Defendant Gao's role within VBit. Defendant Gao contends that he was not a founder or co-founder of VBit, he was recruited by Defendant Don Vo to work in sales, and he was never an officer, manager, or director of any VBit entity. (D.I. 296-2 at ¶ 45; D.I. 321 at ¶ 45) Plaintiffs point to evidence that Defendant Gao sometimes described himself as a VBit co-founder. (D.I. 320 at ¶ 1; D.I. 292-3 at 118:18-122:7; D.I. 292-4; D.I. 292-5) Plaintiffs further allege that Defendant Gao worked with Don Vo on an earlier version of the same business model known as "VCloud." (D.I. 296-2 at ¶ 2; D.I. 292-14; D.I. 292-3 at 31:3-32:16) Defendant Gao testified that he recruited "possibly more than 1,000" people to purchase VBit mining packages through his sales efforts. (D.I. 320 at ¶ 9; D.I. 292-3 at 112:23-113:13) Defendant Gao also traveled with Don Vo to visit data centers, promote VBit, and recruit customers. (D.I. 320 at ¶ 22; D.I. 326 at ¶ 26)

Defendant Gao testified that he believed VBit was a legitimate company, he sold his other assets and businesses to focus his attention on VBit, and he personally visited VBit mining data centers and saw mining equipment. (D.I. 296-2 at ¶¶ 42-44; D.I. 297-8 at 19:11-15, 58:19-59:3, 96:2-7) But Plaintiffs contend that VBit's internal operations differed materially from the way the business was presented to customers. According to Plaintiffs, VBit represented that customers could lease, with an option to purchase, Bitcoin-mining machines hosted by VBit and that mined Bitcoin would appear in customers' virtual wallets for withdrawal. (D.I. 320 at ¶¶ 3-4; D.I. 18 at ¶ 8; Ex. A at 1) The wallet software credited customers based on a formula rather than the output of any specific hardware, and Bitcoin was available for withdrawal only if Don

Vo released it from a "mining pool wallet." (D.I. 320 at ¶¶ 5-6, 13; Ex. D at 104:9-25, 79:21-80:21)

It is undisputed that Defendant Gao held shares in VBit stock and profited from commissions he received promoting VBit. (D.I. 320 at ¶¶ 24-25; D.I. 325 at ¶ 24) Defendant Gao withdrew Bitcoin from his VBit wallet from December 17, 2019 through June 13, 2022, leaving only "one or two" Bitcoin in the account. (D.I. 320 at ¶ 26; D.I. 326 at ¶ 26) VBit wrote a $432,000 check to Defendant Gao's business entity, Network Ventures LLC, on November 16, 2021. (D.I. 320 at ¶ 27; D.I. 326 at ¶ 27; D.I. 292-18) Defendant Gao traveled twice to Vietnam to meet with Don Vo in June and December of 2022. (D.I. 320 at ¶ 30; D.I. 326 at ¶ 30)

**B. Procedural History**

Plaintiffs initiated this civil action on November 10, 2022. (D.I. 1 at ¶¶ 188-255) On December 13, 2022, the case was referred to the undersigned magistrate judge "for all motions and all hearings up to and including the pretrial conference." (D.I. 16) The following month, Defendant Gao and Defendant Phuong D Vo moved to dismiss the original complaint for lack of standing, lack of personal jurisdiction, improper venue, and failure to state a claim under Federal Rule of Civil Procedure 12(b). (D.I. 30; D.I. 33) While the motions to dismiss remained pending, the Clerk of the Court entered defaults in appearance under Rule 55(a) against defendants Danh Cong Vo (a/k/a Don Vo), VBit Mining LLC, and VBit Technologies Corporation.[8] (D.I. 62; D.I. 107) The court recommended granting Defendant Gao's motion to

---

[8] The docket indicates that Advanced Mining Group was served on November 16, 2022. (D.I. 12) However, no appearance of counsel was entered on behalf of Advanced Mining Group. It is well-established that "a corporation may appear in the federal courts only through licensed counsel." *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993). Despite the failure of Advanced Mining Group to retain counsel, Plaintiffs took no further action to pursue their claims against it and did not serve the FAC on Advanced Mining Group. Pursuant to the corporate disclosure statement filed by Defendants VBit Technologies Corp. and VBit Mining LLC, Advanced Mining Group is the parent of VBit Technologies Corp., and VBit Technologies Corp.

dismiss without prejudice in a Report and Recommendation that was adopted on September 25, 2023. (D.I. 112; D.I. 128)

Plaintiffs filed the operative First Amended Complaint ("FAC") on October 25, 2023. In the FAC, Plaintiffs removed all references to mining packages as "securities," claiming they should be disregarded as "stray and inadvertent" references in the original pleading. (D.I. 131 at ¶¶ 192-98; D.I. 40 at 7 n.6) Defendant Gao and Phuong D Vo moved to dismiss the FAC, and the court denied both motions to dismiss. (D.I. 131; D.I. 140; D.I. 145; D.I. 171; D.I. 178) In January of 2026, Defendant Sean Tu was dismissed from the action, and the court stayed the case as to Defendant Phuong D Vo to facilitate a settlement. (D.I. 313; D.I. 314; D.I. 315; D.I. 317; D.I. 318) Defendant Gao is presently the only active defendant in the case.

The Securities and Exchange Commission ("SEC") has since filed a civil securities fraud action against Phuong D. Vo, Don Vo, and other individual defendants, but Defendant Gao is not named in the action. *See SEC v. Phuong D. Vo*, C.A. No. 25-1513-RGA, D.I. 1 (D. Del. Dec. 17, 2025).

## II. DISCUSSION

### A. Defendant Gao's Motion to Strike

Without citing a governing rule or legal framework, Defendant Gao moves to strike portions of Plaintiffs' concise statement of facts in support of their opposition to the motion for summary judgment.[9] (D.I. 327; D.I. 320) In the motion, Defendant Gao seeks to strike allegedly

does business as "Advanced Mining." (D.I. 19) The FAC alleges that Defendants sold VBit Technologies Corp. to Advanced Mining Group on January 31, 2022. (D.I. 131 at ¶ 18)

[9] Defendant Gao quotes *Sonos, Inc. v. D&M Holdings, Inc.*, C.A. No. 14-1330-RGA-MPT, 2016 WL 4249493, at *2 (D. Del. Aug. 10, 2016) for the proposition that "[m]otions to strike are appropriate when they 'serve to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" (D.I. 327 at 1) In *Sonos*, the court addressed a motion to strike certain affirmative defenses raised in the defendant's pleading under Federal Rule of Civil Procedure 12(f). *Sonos*, 2016 WL 4249493, at *1. Rule 12(f) applies only to content contained in a pleading and does not extend to a concise statement of facts filed in

inadmissible hearsay and evidence, as well as statements that are allegedly immaterial or mischaracterize the record. The motion is procedurally improper. Rule 56(c)(2) provides that a motion for summary judgment is the proper vehicle to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c). For avoidance of doubt, the Advisory Committee Notes to Rule 56(c)(2) expressly state that "[t]here is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment. Defendant Gao's failure to cite the relevant legal standard is fatal to his motion to strike. *See McLaren v. UPS Store, Inc.*, 2023 WL 3182842, at *2 (D.N.J. Apr. 29, 2023) (denying the defendants' motion to strike that did not "identify any authority pursuant to which they seek relief" and instead challenged the propriety and relevance of the plaintiff's submissions). Consequently, I recommend that the court deny Defendant Gao's motion to strike. (D.I. 327)

**B. Defendant Gao's Motion for Summary Judgment**

**1. Legal standard**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

---

opposition to a motion for summary judgment. *See* Fed. R. Civ. P. 12(f) ("The court may strike *from a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.") (emphasis added).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). To assert that a fact is genuinely disputed, the non-movant must support the position either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

### 2. Analysis

Before addressing the substance of Defendant Gao's summary judgment arguments, the court considers Plaintiffs' position that Defendant Gao should be sanctioned for spoliating evidence because the spoliation issue may impact the universe of evidence considered on summary judgment. (D.I. 319 at 26-29) Specifically, Plaintiffs seek sanctions in the form of an adverse inference and/or denial of Defendant Gao's motion for summary judgment because Defendant Gao allegedly failed to preserve his Telegram communications with Don Vo after learning he was named as a defendant in this litigation. (*Id.*)

Plaintiffs' request for sanctions is both procedurally improper and untimely. The request is procedurally improper because Plaintiffs raised it in their opposition to Defendant Gao's motion for summary judgment instead of filing a motion requesting affirmative relief. *See Thomas v. Walmart, Inc.*, 2023 WL 2372918, at *6 (W.D. Wash. Mar. 6, 2023) (citing cases holding that "it is procedurally improper to include a request for affirmative relief in a response brief"). The request is untimely because Plaintiffs raised the issue for the first time on January 30, 2026, almost five months after the close of fact discovery. (D.I. 235) Although Rule 37(e) "does not contain a specific reference to the timing of the filing of a motion seeking spoliation-related sanctions," the motion "should be filed as soon as reasonably possible after discovery of the facts that underlie the motion." *Biopharma v. Inhibrx, Inc.*, C.A. No. 22-276-CJB, 2024 WL 4651777, at *2 (D. Del. Oct. 24, 2024) (internal quotation marks and citations omitted). Defendant Gao's written discovery responses served in July of 2025 identified his Telegram account, and Plaintiffs questioned Defendant Gao extensively about his Telegram communications during his deposition on August 12, 2025. (D.I. 320, Ex. J, Ex. F at 90:1-24, 124:14-125:22) Plaintiffs offer no explanation for their delay in raising the issue almost five months after the close of fact discovery in their answering brief on summary judgment. *See*

*Biopharma*, 2024 WL 4651777, at *2 (analyzing, among other factors, "how long after the close of fact discovery the relevant spoliation motion has been made" and "the temporal proximity between a spoliation motion and motions for summary judgment").

Having rejected Plaintiffs' spoliation argument, the court next turns to the substance of Defendant Gao's motion for summary judgment. In support of the motion, Defendant Gao raises four main issues: (1) Plaintiffs base their RICO claims on conduct that is "actionable as fraud in the purchase or sale of securities," and are therefore barred by 18 U.S.C. § 1964(c); (2) Plaintiffs' fraud-based claims at Counts I, II, III, and X of the FAC fail because there is no evidence that Defendant Gao committed fraud; (3) Plaintiffs' civil conspiracy and UTPCPL claims against Defendant Gao are restated iterations of their failed fraud claims; and (4) Plaintiff's conversion claim fails. (D.I. 297) The court addresses each argument in turn.

**a. RICO and the PSLRA bar (Counts I and II)**

Defendant Gao argues that Plaintiffs' claims for RICO participation and conspiracy are barred as a matter of law under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (D.I. 297 at 4-8) The PSLRA amended Section 1964(c) of the RICO statute "to eliminate, as a predicate act for a private cause of action under [RICO], any conduct actionable as fraud in the purchase or sale of securities[.]" *Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 157 (3d Cir. 1998). "[T]he proper focus of the analysis is on whether the conduct pled as predicate offenses is 'actionable' as securities fraud—not on whether the conduct is 'intrinsically connected to, and dependent upon' conduct actionable as securities fraud." *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999); *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 730-31 (D. Del. 2003). The Third Circuit has explained that "a plaintiff cannot avoid the RICO Amendment's bar by pleading mail, wire fraud and bank fraud as predicate

offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Bald Eagle*, 189 F.3d at 328.

Defendant Gao argues that Plaintiffs' RICO claims are barred under the PSLRA because the mining packages sold as "investment contracts" constitute securities under the U.S. Supreme Court's ruling in *S.E.C. v. Howey Co.*, 328 U.S. 293 (1946). (D.I. 297 at 8-9) The Supreme Court explained that determining whether an investment contract is a security depends on "whether the scheme involves [1] an investment of money [2] in a common enterprise [3] with profits to come solely from the efforts of others." *Id.* at 301. Plaintiffs concede the first element by admitting that: (1) Mr. Dettmering purchased a Black Diamond package and hosting services for approximately $132,076; and (2) Mr. Mangubat purchased a Black Diamond package and hosting services for approximately $84,750. (D.I. 131 at ¶¶ 28-29) As to the third prong, there is no dispute that profits from the mining contracts were derived solely from Defendants' efforts. (D.I. 131 at ¶ 8)

Plaintiffs contest the second element, arguing that the mining packages do not amount to a common enterprise because they lack horizontal commonality, which "is characterized by a pooling of investors' contributions and distribution of profits and losses on a pro-rata basis among investors." (D.I. 319 at 12); *S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 187-88 (3d Cir. 2000) (internal quotation marks and citations omitted). "Generally, pooling occurs when the funds received by the promoter through an offering are, essentially, reinvested by the promoter into the business" and "such reinvestment increases the value of the instrument offered." *Friel v. Dapper Labs, Inc.*, 657 F. Supp. 3d 422, 436 (S.D.N.Y. 2023). According to Plaintiffs, their success in mining Bitcoin was not tied to the success or failure of other VBit customers under the terms of the mining contracts because Plaintiffs leased specific hardware, and the Bitcoin mined

by their own equipment was distributed directly to their personal digital wallets. (D.I. 319 at 12-13)

Plaintiffs' position ignores the Supreme Court's instruction that "form should be disregarded for substance and the emphasis should be on economic reality." *Howey*, 328 U.S. at 298-99; *see also Applied Underwriters Captive Risk Assurance Co. v. Beemac Driver Mgmt.*, 2017 WL 10841791, at *2 (D. Neb. Dec. 20, 2017) ("Stated another way, a financial instrument may be a 'security' for purposes of federal securities law even if its express terms indicate otherwise."). In their statement of facts, Plaintiffs acknowledge that, "[i]n contrast from its representations to its victims, VBit structured the wallet software so that they received Bitcoin in their wallet based on a formula and not based on what their specific hardware mined[,]" and "Bitcoin was only available for customers to withdraw if Don Vo released Bitcoin to their wallets from the 'mining pool' wallet." (D.I. 320 at ¶¶ 5-6) In other words, VBit's representation that each customer's virtual wallet held the Bitcoin actually mined from the customer's hardware was not true—VBit instead "used software it developed to credit customers Bitcoin based on a logical amount that their equipment could have mined." (*Id.* at ¶ 13) The deposition testimony of Sean Tu further confirms that VBit determined the amount of Bitcoin that should have been collectively mined and deposited into the mining pool instead of calculating the amount of Bitcoin actually mined by each customer's respective hardware. (D.I. 292, Ex. L at 103:5-104:17)

In keeping with the factual record in this case, other proceedings stemming from the same transactions in VBit mining packages uniformly treat the mining contracts as securities. In *Pelham v. VBit Technologies Corp.*, a group of purchasers of VBit's mining contracts brought claims under the Securities Act of 1933 against the same defendants named in the instant case.

*See Pelham v. VBit Tech. Corp.*, C.A. No. 23-162-JLH-SRF, D.I. 34 (D. Del. July 29, 2024).[10] Furthermore, the SEC filed suit against Phuong D. Vo, Don Vo, and others (but not Defendant Gao) on December 17, 2025, based on the same core allegations that Don Vo sold investment contracts to customers under false pretenses and pooled customers' assets together. *See SEC v. Phuong D. Vo*, C.A. No. 25-1513-RGA, D.I. 1 at ¶¶ 1, 27-98 (D. Del. Dec. 17, 2025). The complaint details how customers' assets "were pooled in VBit's mining pool, and . . . the bitcoins generated were reflected in investors' accounts according to the designated hashrate computing power of the mining rigs the investor 'owned' per the Hosting Agreement they purchased[,]" tying the fortunes of each investor to the fortunes of all other investors "because every investor's chance of earning a profit was tied directly to the performance of the greater VBit mining pool[.]" *Id.* at ¶ 129. Defendant Gao also refers to publicly available decisions by the securities enforcement divisions of three states—Washington, Montana, and California—that penalized VBit for selling the mining packages as unregistered securities.[11] (D.I. 297 at 13 & n. 3-5)

Plaintiffs' reliance solely on *Revak v. SEC Realty Corp.*, a pre-PSLRA case, to respond to Defendant Gao's common enterprise argument is misplaced.[12] (D.I. 319 at 15) (citing *Revak v. SEC Realty Corp.*, 18 F.3d 81 (2d Cir. 1994)). In *Revak*, the court determined there was no common enterprise among investors in condominium units serviced by a management company

[10] The court's recommendation in the instant case is limited to the facts of this case. The court will address the pending motions in *Pelham* on their own merits based upon the factual record developed through discovery in that case.

[11] Links to the orders are available at https://dfi.wa.gov/sites/default/files/documents/securities-orders/S-20-3010-21-CO01.pdf (State of Washington), https://csimt.gov/wp-content/uploads/2023/09/2023-09-25-Final-Agency-Action-and-Default-Order-VBit.pdf (Montana), and https://dfpi.ca.gov/wp-content/uploads/sites/337/2024/02/D-R-VBit-Technologies-Corp.pdf (California).

[12] Even in this pre-PSLRA case, when "racketeering activity" could include "fraud in the sale of securities," the Second Circuit affirmed the dismissal of the plaintiffs' RICO claims. *Revak*, 18 F.3d at 89.

because the "rents and expenses attributable to each unit were not shared or pooled in any manner, but were instead the sole responsibility of the unit owner. Plaintiffs owned individual units, and could make profits or sustain losses independent of the fortunes of other purchasers. There are simply no indicia of horizontal commonality." *Id.* at 88. Here, in contrast, there is horizontal commonality based upon the Bitcoin deposited into the mining pool as previously discussed, *supra*. Because there is no genuine dispute that the VBit mining packages are "securities" under the *Howey* factors, I recommend that the court GRANT Defendant Gao's motion for summary judgment on the RICO claims at Counts I and II of the FAC because those causes of action are barred under the PSLRA.[13]

**b. Fraud-based claims (Counts III and X)[14]**

Defendant Gao argues that Plaintiffs fail to establish either common law fraud (Count III) or negligent misrepresentation (Count X), both of which require a plaintiff to demonstrate that the defendant knowingly misrepresented a material fact. (D.I. 297 at 15; D.I. 131 at ¶¶ 225, 271); *see Oswald v. Pac. Life Ins. Co.*, 2026 WL 1093352, at *9-10 (E.D. Pa. Apr. 22, 2026) (noting that both fraud and negligent misrepresentation claims "require plaintiffs to establish that they have been injured as [a] result of justifiable reliance upon an alleged misrepresentation."). These claims are based on averments that Defendant Gao falsely represented VBit customers

---

[13] Plaintiffs contend that "[t]his Court has already rejected this precise argument. In its August 1, 2024 Report and Recommendation, the Court held that the Bitcoin mining packages promoted by Mr. Gao are not securities because they fail to satisfy the common-enterprise requirement, and Judge Hall adopted that decision in full." (D.I. 319 at 11) But the Report and Recommendation and the district judge's Memorandum Order adopting it only addressed whether the FAC stated a facially plausible claim. (D.I. 171; D.I. 178) The court could not and did not make any ruling that Plaintiffs have a meritorious claim under RICO. As Judge Hall expressly noted in her adoption: 'whether an arrangement qualifies as an investment contract is a fact-specific inquiry[.]" (D.I. 178 at 6)

[14] To the extent Defendant's argument further encompasses Plaintiffs' RICO claims, the court declines to address those claims because it has already recommended their dismissal. *See* Section II.B.2.a, *supra*.

would be given computer hardware and services related to Bitcoin mining. According to Defendant Gao, the record is devoid of evidence suggesting that he made any of the misrepresentations listed by Plaintiffs. (D.I. 297 at 18-20) In response, Plaintiffs contend that Defendant Gao "necessarily made material misrepresentations and omissions in marketing VBit's Mining Packages by promising customers they were purchasing or leasing hosted mining equipment that would generate Bitcoin credited to their wallets[.]" (D.I. 319 at 22)

Plaintiffs' cause of action for common law fraud at Count III of the FAC rests on the following misrepresentations and/or omissions:

> (a) VBit is a legitimate business and not an illegal Ponzi scheme and complete sham operation;
> (b) Defendants would not utilize Bitcoin mined by Plaintiffs for their own use and benefit;
> (c) Defendants were duly authorized to offer the mining equipment and hosting services as specifically detailed in the Contract;
> (d) Defendants were offering and maintaining individualized, hardware-hosted mining services, where in reality Defendants misappropriated the majority of the computing power they purported to sell;
> (e) Plaintiffs were purchasing Bitcoin-mining hardware that could be removed from Defendants' so-called "data centers" with the payment of $1, plus shipping and handling;
> (f) Plaintiffs could remove or "cash out" their mined Bitcoin from their virtual wallets any time.

(D.I. 131 at ¶ 225) The unrefuted evidence of record shows that none of the named Plaintiffs relied on statements or information from Defendant Gao about the operation or administration of the mining activity or the virtual wallets before they executed their mining contracts. (D.I. 296-2 at ¶¶ 11, 25-27, 41; D.I. 321 at ¶¶ 11, 25-27, 41) Plaintiffs point to Defendant Gao's deposition testimony and an email chain between Defendant Gao and a potential VBit customer as evidence that Defendant Gao participated in a multi-level marketing scheme. (D.I. 292, Ex. C at 112:23-113:13; D.I. 320, Ex. A) However, this evidence does not show that Defendant Gao made misrepresentations to Dettmering, Mangubat, or Eichler, nor does it establish that Defendant Gao

knew or should have known any of his representations were false at the time he made them. Consequently, I recommend that the court GRANT the motion for summary judgment on Counts III and X without reaching Defendant Gao's arguments under the Gist of the Action Rule and Economic Loss Doctrine.

**c. Civil conspiracy and the Pennsylvania UTPCPL (Counts IV and VII)**

To establish liability for civil conspiracy under Pennsylvania law against Defendant Gao, Plaintiffs must prove the following elements: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Estate of Werner v. Werner*, 781 A.2d 188, 191 (Pa. Super. Ct. 2001). Civil conspiracy also requires "proof of malice or an intent to injure" by the tortfeasor. *Strickland v. Univ. of 23 Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997). Defendant Gao contends that there is no evidence showing his agreement to enter into a conspiracy and no proof of actual malice. (D.I. 297 at 26-27) Plaintiffs refer back to evidence cited in support of their RICO claims and allege that Defendant Gao's agreement to facilitate the conspiracy is shown through his role at the top of the marketing scheme. (D.I. 319 at 23)

Some of the evidence cited by Plaintiffs is not available at the cited location. For example, paragraph 11 of Plaintiffs' statement of facts reads as follows:

> Defendant Jin Gao worked as an independent contractor at the top of VBit's multi-level marketing platform, taking on the title of "Vice Chairman," and Gao held an equity interest in VBit. Ex. F at 55:24-56:23, 57:22-58:5, 258:22-259:9; Ex. A at 8186 ("Yes, I own some shares (stock grants) of [VBIT]. My primary role is the network/affiliate marketing side as I am the 1st rep. We are slightly below 3k total reps.").

(D.I. 320 at ¶ 11) The "Ex. F" cited in the paragraph takes the reader to an excerpt of Defendant Gao's deposition transcript. (*Id.*, Ex. F) However, the excerpt jumps from page 55 to page 88, and it ends at page 127. As a result, only two of the 45 lines cited in Exhibit F are available at

the indicated location. (*Id.*) Similarly, at paragraph 30, Plaintiffs cite evidence purportedly describing Defendant Gao's travel to Vietnam to meet with Don Vo in December of 2022 by referring to D.I. 292-3 at 254:1 to 257:3. (*Id.* at ¶ 30) The transcript excerpt at 292-3 ends at page 255:25 and resumes at page 260:1, omitting more than a page of the excerpt range cited by Plaintiffs. (D.I. 292-3 at 20-21)

The court cannot credit Plaintiffs' assertions where, as here, Plaintiffs bear the burden to contradict Defendant Gao's position with evidence from the record. *See Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 330 (3d Cir. 2016) ("[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party who must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." (quotations omitted)). It is well-established that "the court is not obliged to scour the record to find evidence that will support a party's claims." *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011). "Judges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pa., Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (quotations omitted).

The remaining evidence that the court was able to locate describes Defendant Gao's relationship with Don Vo at prior companies and his travel to data centers with Vo at VBit, (D.I. 320, Ex. F at 20:12-21:13, 31:3-32:16, 38:6-38:11; D.I. 292-3 at 49:19-52:20, 222:16-223:17), his compensation by commission at VBit, (D.I. 320, Ex. F at 39:6-22; D.I. 292-3 at 168:11-25), and his role at VBit, including his identification as a VBit co-founder in certain social media postings and his promotion to vice chairman for his marketing activities, (D.I. 292-3 at 118:18-122:7, 168:11-25; D.I. 292-4; D.I. 292-5). Plaintiffs also cite Defendant Gao's written discovery responses describing his 2022 meetings with Don Vo in Vietnam. (D.I. 292-18 at 5-6) These responses indicate that Defendant Gao raised concerns with Don Vo about VBit customers' inability to make withdrawals from their digital wallets—an issue that he had also experienced

himself. (*Id.*) Nothing in the cited evidence supports Plaintiffs' assertion that Defendant Gao conspired with Don Vo or anyone else to defraud VBit customers. Because Plaintiffs fail to raise a genuine issue of material fact, I recommend that the court GRANT Defendant Gao's motion for summary judgment on Count IV of the FAC for civil conspiracy.

Plaintiffs' UTPCPL claim is based on the same facts as their RICO and other fraud-based claims. "The UTPCPL prohibits any person from engaging in [u]nfair methods of competition and unfair or deceptive acts or practices," providing a private cause of action for "[a]ny person who purchases or leases goods or services . . . and thereby suffers any ascertainable loss" as a result of the unlawful practice. *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 465 (E.D. Pa. 2009) (internal quotations and citations omitted). "Because the loss must occur 'as a result' of unlawful conduct under the UTPCPL, 'a private plaintiff pursuing a claim under the statute must prove justifiable reliance' on the unlawful conduct, not merely that the wrongful conduct caused plaintiff's injuries." *Id.* (quoting *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008)); *see also Lisowski v. Walmart Stores, Inc.*, 2022 WL 2763698, at *4 (3d Cir. July 15, 2022) (stating that Third Circuit precedent "unambiguously recognizes" the requirement that a plaintiff must allege justifiable reliance on an unlawful practice to support a statutory claim under the UTPCPL).[15] For the reasons discussed at Section II.B.2.b, *supra*, the unrefuted evidence of record shows that none of the named Plaintiffs justifiably relied on statements or information from Defendant Gao about the operation or administration of the mining activity or the virtual wallets before they executed their mining contracts.

---

[15] Defendant Gao quotes *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637 (Pa. 2021) in his opening brief but, as Plaintiffs note, the quoted language does not appear in that case. (D.I. 297 at 27) Plaintiffs contend that *Gregg* overruled and abrogated prior cases interpreting the UTPCPL to require all elements of common law fraud. (D.I. 319 at 20) In *Lisowski*, however, the Third Circuit expressly discussed *Gregg* and nonetheless determined that justifiable reliance is a required element of a claim under the UTPCPL. *See Lisowski*, 2022 WL 2763698, at *4.

Plaintiffs also argue "the fact that Defendant Gao did not make direct representations to the named Plaintiffs is irrelevant under the UTPCPL" because he may nonetheless be jointly and severally liable for the acts of joint tortfeasors. (D.I. 319 at 21) But the application of joint and several liability does not absolve Plaintiffs of their burden to show Defendant Gao committed wrongdoing that led them to rely on his conduct to their detriment. Plaintiffs cite *Neal v. Bavarian Motors, Inc.*, a case in which the Pennsylvania Superior Court affirmed a judgment that Bavarian, a car dealership, and Mercury, a third-party lender, were jointly and severally liable under the UTPCPL for selling a stolen car to the plaintiff. *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1028 (Pa. Super. Ct. 2005). The court explained that joint and several liability applies only "[i]f the tortious conduct of two or more persons causes a single harm which cannot be apportioned[.]" *Id.* (quoting *Capone v. Donovan*, 480 A.2d at 1251 (Pa. 1984)). Although the court determined that "Mercury's actions were less culpable than [those] of Bavarian[,]" Mercury also committed tortious acts by failing to comply with vehicle financing procedures, which contributed to the plaintiff's harm. *Id.* Here, in contrast, Plaintiffs cite no evidence to support wrongdoing by Defendant Gao. Pennsylvania courts have also rejected the argument that a particular defendant can be held accountable under the UTPCPL for misrepresentations he did not make based on pleaded allegations that unspecified defendants misrepresented the characteristics of a loan. *Roche v. Sparkle City Realty*, 2009 WL 1674417, at *4 (E.D. Pa. June 12, 2009); *see also Singleton v. JAS Automotive LLC*, 2019 WL 199897, at *5 (E.D. Pa. Jan. 15, 2019).

For the foregoing reasons, I recommend that the court GRANT Defendant Gao's motion for summary judgment on Plaintiffs' claims for civil conspiracy and violations of the UTPCPL at Counts IV and VII, respectively.

**d. Conversion (Count V)**

Defendant Gao moves for summary judgment on Plaintiffs' conversion claim at Count V of the FAC, and Plaintiffs confirm that they have "elected not to proceed against Defendant Gao under their conversion claim." (D.I. 319 at 1 n.2) Consequently, I recommend that the court GRANT Defendant Gao's motion for summary judgment on Count V of the FAC.

**C. Plaintiffs' Motion for Class Certification**

As a threshold issue, in accordance with its independent duty to satisfy itself of its subject matter jurisdiction, the court addresses whether it has subject matter jurisdiction over the case under the diversity statute as amended by the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). Section 1332(d) "provides district courts with original jurisdiction over cases that have (1) an amount in controversy over $5,000,000; (2) minimally diverse parties, meaning at least one member of the plaintiff class is a citizen of a state different from any defendant; and (3) a class consisting of at least 100 members." *Walsh v. Defenders, Inc.*, 894 F.3d 583, 586 (3d Cir. 2018). CAFA jurisdiction is determined at the time the civil action is filed, regardless of whether a Rule 23 class is ultimately certified. *Coba v. Ford Motor Co.*, 932 F.3d 114, 119 (3d Cir. 2019). Here, both the original complaint and the FAC allege that the amount in controversy exceeds $5,000,000, the number of proposed class members exceeds 100, and many members of the proposed class are citizens of different states than Defendants.[16] (D.I. 1 at ¶ 25; D.I. 131 at ¶ 25)

"Where there is no change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit" under the "time-of-filing" rule. *Connolly v. Taylor*, 27 U.S. 556, 565 (1829). "But the time-of-filing rule admits

---

[16] The original complaint identified Plaintiffs as Pennsylvania citizens and at least one defendant, VBit Technologies Corp., as a Delaware corporation, thus satisfying the diversity requirement under CAFA. (D.I. 1 at ¶¶ 28-29, 32); *see* 28 U.S.C. § 1332(d)(2)(A).

exceptions in cases where the parties change, in contrast to cases in which the circumstances attendant to those parties change." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 152 (3d Cir. 2009). Here, the only remaining active defendant is Defendant Gao, a citizen of Pennsylvania.[17] (D.I. 131 at ¶ 43) Dettmering, Mangubat, and Eichler are also citizens of Pennsylvania. (*Id.* at ¶¶ 28-29; C.A. No. 22-1574-JLH-SRF, D.I. 48 at ¶ 28) The class certification briefing does not address CAFA jurisdiction at all, let alone the applicability of any exceptions to CAFA jurisdiction or the impact of the Rule 55(a) entries of default in appearance against VBit Technologies Corp. and VBit Mining LLC[18] on their status as defendants in this action. (D.I, 292; D.I. 322; D.I. 323) However, the exceptions to CAFA jurisdiction are "akin to abstention, which is not jurisdictional." *Banks v. E.I. DuPont de Nemours & Co.*, C.A. No. 19-1672-MN-JLH, 2021 WL 7209361, at *3 (D. Del. Dec. 2, 2021). The court therefore addresses Plaintiffs' motion for class certification in accordance with its jurisdiction under CAFA.

A party seeking class certification bears the burden of establishing four threshold requirements under Rule 23(a) by a preponderance of the evidence: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, C.A. No. 12-md-2358-JDW, 2026 WL 2530241, at *9-10 (D. Del. Aug. 27, 2026). If the four requirements of Rule 23(a) are met, the movant must then satisfy one subsection of Rule 23(b). Fed. R. Civ. P. 23(b). In this case,

[17] Phuong D Vo is also a Pennsylvania citizen. (D.I. 131 at ¶ 39)

[18] The court cannot determine the citizenship of VBit Mining LLC from the pleaded allegations. The FAC states that "Defendant VBit Mining is a Delaware limited liability company with a principal place of business located at 1625 Washington Avenue, Philadelphia, Pennsylvania 19146." (D.I. 131 at ¶ 30) But an LLC is a citizen of every state in which its members are citizens. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). The fact that VBit Mining LLC is a Delaware limited liability company is irrelevant to determining its citizenship. *See Williams Rowland Acquisition Corp. v. Glob. Food & Ingredients, Ltd.*, C.A. No. 24-471-RGA, D.I. 63 at 1 (D. Del. Oct. 1, 2025).

Plaintiffs move to certify the following class under Rule 23(b)(3), which requires a showing of predominance and superiority:

> All persons or entities who, at any time up to the present ("Class Period"), entered into an agreement to purchase, acquire or lease Bitcoin mining equipment from Defendants that withdrew less in Bitcoin from their VBit virtual wallet than paid towards their Bitcoin Mining Packages. Excluded from the Class are Defendants, any parent, subsidiary, affiliate, agent, or employee of any Defendant, any co-conspirator and any governmental entity. Also excluded from the Class are residents of Washington State.

(D.I. 292 at 10)

Here, Plaintiffs fail to satisfy the threshold "adequacy" requirement under Rule 23(a)(4). This factor requires the court to consider: (a) whether the plaintiff's attorney is qualified, experienced, and able to conduct the proposed litigation, and (b) whether the named plaintiff has interests antagonistic to those of the class. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). As explained at Section I.B, *supra*, Defendant Gao is the only remaining active litigant in this case.[19] Should the court adopt the recommendation to grant Defendant Gao's motion for summary judgment, Plaintiffs will have no remaining claims against Defendant Gao and thus cannot adequately represent others who may have a claim against him. *See In re Lipitor Antitrust Litig.*, 2026 WL 2350732, at *6 (3d Cir. Aug. 13, 2026) (citing cases).

Because Plaintiffs cannot meet their burden of showing the adequacy of the class representatives, which is a requirement under Rule 23(a), the court need not address the remaining factors of Rule 23(a) and Rule 23(b)(3). *See Van Buren v. Abraxas Youth & Fam.*

---

[19] If the court adopts the recommended disposition of Defendant Gao's motion for summary judgment, the only claims remaining in the case will be the stayed claims for civil conspiracy (Count IV), conversion (Count V), and violations of the UTPCPL (Count VII) against Phuong D Vo. The recommendation that Plaintiffs' RICO claims at Counts I and II of the FAC are barred as a matter of law under the PSLRA applies to those claims to the extent they are brought against Phuong D Vo as well. The court recommends denial of the motion for class certification without prejudice in the unlikely event that the remaining claims against Phuong D Vo do not settle and Plaintiffs wish to pursue class certification on those remaining claims.

*Servs.*, 2024 WL 510084, at *4 (W.D. Pa. Feb. 9, 2024); *Bros. v. Portage Nat'l Bank*, 2009 WL 10730421, at *8 (W.D. Pa. Mar. 24, 2009); *see also T.R. v. Sch. Dist. of Phila.*, 4 F.4th 179, 191 (3d Cir. 2021) (grant of summary judgment eliminated the "need [to] address the class certification issues" because "Rule 23 is a procedural device that cannot be interpreted to abridge, enlarge or modify any substantive right") (citation to quoted sources omitted); *Hennessy v. F.D.I.C.*, 58 F.3d 908, 924 (3d Cir. 1995) (declining to address the district court's ruling on class certification after determining that the plaintiffs' claims could not survive summary judgment). Consequently, I recommend that the court DENY without prejudice Plaintiffs' motion for class certification.

**D. Procedural Deficiencies**

**1. John Doe Individuals 1-10 and ABC Companies 1-10**

I recommend that the court DISMISS without prejudice John Doe Individuals 1-10 and ABC Companies 1-10 under Federal Rule of Civil Procedure 21, which provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The Third Circuit has addressed the procedure for litigating claims against unknown "Doe" defendants as follows:

> Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed. The case law is clear that fictitious parties must eventually be dismissed, if discovery yields no identities, and that action cannot be maintained solely against Doe defendants.

*Hindes v. F.D.I.C.*, 137 F.3d 148, 155-56 (3d Cir. 1998) (cleaned up). Consequently, claims against Doe defendants who have not been identified after reasonable discovery must be dismissed. *See Blakeslee v. Clinton Cty.*, 336 F. App'x 248, 250-51 (3d Cir. 2009) (affirming the district court's *sua sponte* dismissal of unidentified defendants); *see also Johnson v. 6 Unidentified City of Wilmington Police Officers*, C.A. No. 08-479-JJF, 2010 WL 1644258, at *9 (D. Del. Apr. 21, 2010) (granting summary judgment as to claims against John Doe defendants

since plaintiff did not identify them and discovery was closed). Moreover, "it is appropriate, before proceeding to trial, to eliminate the fictitious defendants." *Blakeslee*, 336 F. App'x at 251.

This case has been pending for almost four years. Fact discovery closed on September 5, 2025, and Plaintiffs had ample time to take discovery and learn the identities of John Doe Individuals 1-10 and ABC Companies 1-10. (D.I. 235) Under these circumstances, dismissal of John Doe Individuals 1-10 and ABC Companies 1-10 is warranted.

**2. Advanced Mining Group**

I recommend that the court dismiss without prejudice the claims against Advanced Mining Group because it has not appeared in this action and was not properly served. Rule 4(m) requires the court to *sua sponte* dismiss a defendant without prejudice if service is not made on that defendant within 90 days after the complaint is filed, unless the plaintiff shows good cause justifying an extension of time to complete service. Fed. R. Civ. P. 4(m); *see Diaz v. Lezanski*, 2011 WL 2115671, at *10 (D.N.J. May 25, 2011); *Hills v. Romero-Sanchez*, C.A. No. 05-172-JJF, 2006 WL 1431258, at *1 (D. Del. May 24, 2006). The docket in this case shows that Advanced Mining Group was served with the original complaint on November 15, 2022. (D.I. 12) However, Advanced Mining Group did not appear through counsel after it was served. As a result, Plaintiffs were required to serve the FAC via summons on Advanced Mining Group within 90 days of the FAC's October 25, 2023 filing date. *See* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1146 (4th ed. 2021) (explaining that the service provisions of Fed. R. Civ. P. 5 apply only to parties who have appeared, and amended or supplemental pleadings must be served on parties who have not yet appeared in conformity with Fed. R. Civ. P. 4). The deadline to timely serve Advanced Mining Group expired on January 23,

2024. To date, Plaintiffs have not issued a summons on Advanced Mining Group to serve the FAC.

The record before the court does not support a finding of good cause for Plaintiffs' failure to timely serve Advanced Mining Group. To determine whether good cause exists for the failure to timely complete service, courts consider three factors: (1) whether plaintiff made a reasonable effort to effectuate service, (2) whether and to what degree the defendant has been prejudiced, and (3) whether plaintiff sought an extension of time to effectuate service. *Hills*, 2006 WL 1431258, at *1 (citing *Farrace v. United States Department of Justice,* 220 F.R.D. 419, 420–421 (D. Del. 2004)). A lack of prejudice to the defendant "is insufficient, standing alone, to establish the 'good cause' required to justify an extension of time to effectuate service." *Id.* Here, Plaintiffs have made no attempt to serve the FAC on Advanced Mining Group, and they did not request an extension of time. Thus, there can be no good cause to excuse Plaintiffs' failure to timely serve the FAC on Advanced Mining Group.

## III. CONCLUSION

Plaintiffs' unopposed Motion to Seal is GRANTED. (D.I. 290) For the foregoing reasons, I recommend that the court:

1. DENY Defendant Gao's partial Motion to Strike, (D.I. 327);
2. GRANT Defendant Gao's Motion for Summary Judgment, (D.I. 296);
3. DENY without prejudice Plaintiffs' Motion to Certify Class, (D.I. 291);
4. DISMISS without prejudice all claims against John Doe Individuals 1-10 and ABC Companies 1-10 pursuant to Rule 21; and
5. DISMISS without prejudice all claims against Advanced Mining Group pursuant to Rule 4(m).

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **October 14, 2026**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Report and Recommendation issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: October 7, 2026

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE